# WHEELING.

## WARD *v.* WARD *et als.*

Submitted June 6, 1882—Decided March 17, 1883.

(\*WOODS, JUDGE, Absent.)

1. A commissioner's report, made in a cause rightly referred, on the face of which no error appears, will be presumed by the court as admitted to be correct by the parties, not only so far as it settles the principles of the account, but also in regard to the sufficiency of the evidence upon which it is founded, except in so far and as to such parts thereof as may be objected to by proper exception taken thereto before the hearing; and the court, at the hearing, is bound to observe this rule of equity practice. And it is error for the court, at the hearing, to remodel and re-state the whole account stated in such report, and enter a decree on its own statement without reference to the account stated by the commissioner or the action of the parties in excepting or not excepting thereto. (p. 270.)

2. If in any case the court is not satisfied with the report of a commissioner in regard to matters not excepted to which might be affected by evidence *aliunde*, instead of remodelling the account on its own estimate of the evidence, it should re-commit the report with instructions indicating its opinion, so that the respective parties might have an opportunity of meeting any objection thus suggested. (p. 272.)

\*Cause submitted before Judge W. took his seat on the bench.

3. The proper rule for computing interest, where partial payments have been made, is to deduct the payment from the aggregate sum of principal and interest, computing the latter to the date of the payment, and the balance forms a new capital on which interest is to be computed to the next payment; but the new capital must in no instance be more than the former, so that if the payment be less than the interest due, the excess of interes. t must not augment the remaining capital, because that would give interest upon interest, which would be unlawful. (p. 274.)

Appeal from and *supersedeas* to a decree ot the circuit court of the county of Randolph, rendered on the 6th day of December, 1879, in a cause in said court then pending, wherein William L. Ward was plaintiff and Jacob G. Ward and others were defendants, allowed upon the petition of said plaintiff.

Hon. John Brannon, judge of the sixth judicial circuit, rendered the decree appealed from.

SNYDER, JUDGE, furnishes the following statement of the case:

In April, 1870, William L. Ward filed his bill in the circuit court of Randolph county against Washington G. Ward, alleging therein that upon an accounting had between him and the defendant, who is his brother, it was ascertained that the defendant was indebted to him in the sum of three thousand dollars; that he and the defendant, being the owners in fee of a tract of land lying about two miles from Huttonsville on the west side of the Tygart's Valley river in Randolph county, the defendant by his title-bond, dated October 13, 1857, sold his undivided interest in said land to plaintiff at the price of five thousand five hundred dollars; that by agreement the said indebtedness of three thousand dollars was accepted by the defendant as the down payment on said land and the receipt of that sum is acknowledged in the title-bond, and one thousand five hundred dollars ot the balance of the purchase-money was to be paid on the 1st day of November, 1857, and the remainder of one thousand dollars on the 1st day of November, 1858, and the defendant bound himself to convey his interest in said land, by deed, when said deferred payments should be fully paid; that the said title-

bond was duly signed by the defendant and delivered to the plaintiff and he then took possession of the whole of said land and has held it as his exclusive property ever since; that at different times before, at, and soon after said deferred payments on the land became due he paid to the defendant and to his order on account thereof divers sums of money which in the aggregate paid and discharged the whole of said purchase-money; and that he has requested the defendant to execute to him a deed for his interest in the land but he has failed to do so. And the plaintiff prays the court to compel the defendant, by decree, to execute to him a deed according to the terms of said title-bond and for general relief. The plaintiff exhibited with his bill the title-bond therein referred to, and also an account of the items of the various payments alleged to have been made by him to the defendant on the said land.

The defendant answered said bill admitting the sale of the land, the execution of the title-bond and the terms thereof, as stated in the bill, but denying that the plaintiff had paid the purchase-money or any considerable part thereof as alleged. And he denies that the three thousand dollars, recited in the title-bond as having been paid, was in fact paid at the time or before said bond was executed, or that he was then or at any time previous thereto indebted to the plaintiff, or that any settlement was made between them whereby it was ascertained that the sum of three thousand dollars, or any other sum, was due from him to the plaintiff. He states that prior and subsequent to the date of said title-bond there were large unsettled accounts between him and the plaintiff arising out of mutual dealings, whereby the plaintiff became indebted to him in various large sums of money on account of cattle sold, cash loaned, work done, &c.; that some of the items of the plaintiff's account he admits to be correct, some he denies to be just and others he neither admits nor denies but calls for full proof of their correctness. He expressly charges that many of the items of the plaintiff's accounts are post dated so as to make the same speak as of a day subsequent to the date of the said title-bond, whereas many of them accrued before that date. The defendant, also, exhibits with his answer an itemized account of his charges and claims against the plaintiff.

The defendant having died the cause was revived against his three sons, Jacob G., Renick S. and Adam S. Ward, his devisees and heirs-at-law, and against the said Jacob G. Ward as his executor.

A great number of depositions were taken by both the plaintiff and the defendant. By the former to sustain the account of payments exhibited by him and to disprove many of the items charged against him by the defendant's testator; and by the latter to establish the items of the account exhibited by their testator against the plaintiff and to controvert the correctness of certain items of the plaintiff's said account. The record having thus become quite voluminous and the testimony being very unsatisfactory and conflicting as to many of the items of the respective accounts of the parties, the court by an order made April 30, 1878, referred the cause to a commissioner with directions "to raise and state an account between the plaintiff and the late Washington G. Ward, in which he shall charge the plaintiff with one thousand five hundred dollars as due the 1st of November, 1857, and the further sum of one thousand dollars due the 1st November, 1858, and shall allow the plaintiff all proper credits and payments, and report the true state of accounts between them."

The commissioner made his report and filed the same in May, 1879, ascertaining the aggregate balance of principal and interest due from the plaintiff to the defendant's testator, as of May, 12, 1879, to be one thousand eight hundred and fifty-two dollars and nineteen cents as per his statement of the account which is as follows:

"STATEMENT OF ACCOUNT.

| | | | |
|---|---|---|---|
| "1857, | Nov. | 1.—To amount due by Wm. L. Ward to Wash. G. Ward. (See record).......... | $1,500 00 |
| | | Interest from Nov. 1, '57, to Nov. 11, '57.............................................. | 2 50 |
| | | | $1,502 50 |
| "1857, | Nov. | 11.—Cr. by amount paid Snyder................. | 54 11 |
| | | Balance due Wash. G. Ward............... | $1,448 39 |
| | | Interest on same to Oct. 11, '58............. | 78 83 |
| | | Amount October 11, '58........................ | $1,527 22 |

34

"1858,    Oct.—Cash loan'ed Wm. L. Ward by Wash'n
                G. Ward..................................$    200 00

                Total...............  .........................  $1,727 22
"1858,        "   —Cr. by 2 horses by Ad. Ward..............    160 00

                Balance due Wash'n G. Ward, Oct., '58.  $1,567 22
                Interest from Oct., '58, to Nov. '58.......      5 22

                Amount........ ....................................  $1,572 44
"1858,  Nov.  1.—To amount due by Wm. L. Ward to
                Washington G. Ward.  (See decree.)....  1,000 00

                Total.............................................  $2,572 44
                Interest from Nov. 1, '58, to Nov. 1, '59.    154 25

                Amount ..........................................  $2,726 79
"1859,  Nov.  1.—Cr. by cash paid by Wm. L. Ward to
                Washington G. Ward.......................  1,000 00
                Balance due Wash'n G. Ward, Nov.
                1, '59..........................................  $1,726 79
                35 head of cattle @ $25.00...................    875 00
                Cash loaned....................................     10 00

                Total................................................  $2,611 79
                Interest on this sum from Nov. 1, '59, to
                Mar. 28, '60....................................     63 98

                Amount........... ......................  $2,675 77·
"1860,  Mar.  28.—Cr. by summering 30 head of cattle @
                $5.00 each...................................    150 00
                Balance due Wash'n G. Ward, Mar.
                28, '60..........................................  $2,525 77
                Interest thereon from Mar. 28, '60, to
                Oct. 1, '60.....................................     76 61

                Amount...........................................  $4,602 38
"1860,  Oct.  1.—Cr. by one mare by Ad.........................     90 00

                Balance due Wash'n G. Ward, Oct.
                1, '60..........................................  $2,512 38
                Interest thereon to Nov. 1, 1860...........     12 56

                Amount............................................  $2,524 94
"1860,  Nov.  1.—Cr. by cash paid Jacob W. Marshall to
                Washington G. Ward.......................  $1,500 00

                Balance due Wash'n G. Ward, Nov.
                1, '60..........................................  $1,024 94
                To cash loaned......... ............. $ 2 96

To services taking cattle to
Pennsyl'na............. .............. $50 00

52 96

Total...................................................... $1,077 90
Interest thereon from Nov. 1, '60, to
Feb'y 1, '61..................................... 16 17

Amount................................ .............. $1,094 07
"1861, Feb'y 1.—Cr. by am't paid Wm. C. Price.......... 39 22
Balance due Washington G. Ward, to
Feb'y 1, '61 ..................................... $1,054 85
Interest from Feb'y 1, '61, to Oct. 1, '61. 42 19

Amount............................................... $1,097 04
"1861, Oct. 1.—Cr. by 3 cattle by Ad. Ward................ 90 00

Balance due Wash'n G. Ward, Oct.
1, '61...... ........................................ $1,007 04
Interest from Oct. 1, '61, to Oct. 1, 1864, 181 27

Amount........................ ...................... ...$1,188 31
"1864, Oct. 1.—Cr. by one horse by Ad. Ward........... 150 00

Bal. due Wash'n G. Ward, Oct. 1,
1864................................................... $1,038 31
Interest thereon from Oct. 1, '64, to
Oct. 1, '65....................................... 62 30

Amount ............................................... $1,100 61
"1865, Oct. 1.—Cr. by amount paid Jacob G. Ward..... 30 00

Balance due Wash'n G. Ward, Oct.
1, '65..... .......................................... $1,070 61
Interest thereon from Oct. 1, '65, to
April, '68........ ............................... 160 59

Amount............................................... $1,231 20
"1868, Apr. 1.—Cr. by cash paid by A. Hutton............ 120 00
Balance due Wash'n G. Ward, Apr.
1, 1868...................... . ................... $1,111 20
Interest thereon from Apr. 1, '68, to
May 12, '79....................................... 740 90

Amount due Washington G. Ward
May 12, 1879.................................... $1,852 19"

Both the plaintiff and the defendants excepted to said report and account. The plaintiff's exceptions are as follows:

"The complainant excepts to the report of Commissioner Jones filed in this cause for the following reasons:

"First. Because the commissioner in computing the interest upon balances has compounded it in the following in-

stances, viz: On two thousand five hundred and seventy-two dollars and forty-four cents from 1st of November, 1858, to 1st of November, 1859, instead of on the sum of two thousand five hundred and sixty-seven dollars and twenty-two cents; and on one thousand and thirty eight dollars and thirty-one cents from 1st October, 1864, to 1st October, 1865, instead of one thousand seven dollars and four cents for same time; and on one thousand one hundred and eleven dollars and twenty cents from 1st April, 1868, to May 12, 1879, instead of on the sum of one thousand and seventy dollars and sixty-one cents for same time.

"Second. Because a credit was not allowed for so much of the amount claimed by the plaintiff paid Caleb Boggess as the defendant, W. G. Ward, in his answer, admitted the plaintiff entitled to a credit for, viz., thirty-seven dollars and fifty cents, as of the 30th October, 1860.

"Third. Because no credit was allowed to the plaintiff for the sum of two hundred and fifty dollars of the 13th October,. 1858, paid to J. M. Crouch, admitted by W. G. Ward to A. Hutton, witness, in 1861, to have been paid, and not denied by his answer afterwards filed.

"Fourth. Because no credit was allowed to the plaintiff for the item of sixty-five dollars, or any part of it, which the defendant in his answer distinctly admits to be correct.

"Fifth. Because no credit was allowed to the plaintiff for the sum of one thousand dollars paid in November, 1857, and which was one of the items of the account presented to W. G. Ward for settlement by A. Hutton in 1869, and which was not then denied or objected to, as was the case with other items of the account, and which, by his answer filed in the cause wherein he refers specifically to other items, and disputes the correctness of some of them, he does not deny or otherwise question than to say of it, together with others, that he is thus unable to speak with certainty, does not admit it specifically, but calls for proof. It is distinctly alleged in the bill as an item of cash paid, and not *denied* by the answer, and by the law governing the pleadings, required no other proof, but should have been treated as admitted. The commissioner seems to have overlooked the order of reference, and the fact that the title bond dated October, 1857, required

the payment of one thousand five hundred dollars against the 1st of November thereafter, when because of the short interval between the date of the bond, which recognized a previous settlement, and the payment of one thousand dollars, he assumed that this sum most probably had been settled.

"Sixth. Because no credit was allowed to the plaintiff for the sum of seven hundred dollars shown by the testimony of See and Cutwright to have been paid or loaned by the plaintiff to W. G. Ward in the month of December, 1857.

"Seventh. Because credit was not given to the plaintiff for the following items of the account filed with the bill, viz.: October 13, 1858, four hundred dollars; Id. thirty-two dollars; Id. one hundred and ninety dollars; October 28, 1858, thirty-five dollars; November 15, 1858, fifty-four dollars; October 18, 1865, ten dollars, and which were neither denied when presented by A. Hutton to him for settlement in 1869, nor by W. G. Ward in his answer filed in this cause.

"Eighth. Because the amount which the commissioner finds to be due from the plaintiff to the said W. G. Ward at the close of the war, far exceeds the highest estimate by W. G. Ward that such indebtedness could reach, as shown by his repeated statements to the witnesses whose testimony has been given and filed.

"May 16, 1879."

The exception of the defendants is as follows:

"The defendants except to the report of commissioner Jones, because it allows to the plaintiff a credit of one thousand five hundred dollars as of date November 1, 1860, alleged to have been paid to Wash. G. Ward by the plaintiff by Jacob W. Marshall, as the testimony in the cause is wholly insufficient to warrant such credit."

The cause coming on to be heard on the 6th day of December, 1879, the court entered a decree therein, the material part of which is as follows:

"Upon consideration the court is of opinion that the report of said commissioner Jones is not sustained in its material parts by the proofs herein, and the court deeming it proper to make a statement of the accounts between the parties upon the proofs, has made and filed herein a statement of

accounts between the parties marked "Statement of Accounts by the Court" as a part of the record, from which it appears that there was due of purchase-money from William L. Ward, the plaintiff, to Jacob S. Ward, the executor as aforesaid, on the undivided moiety of the tract of land in the bill and proceedings mentioned, on the 1st day of December, 1879, the sum of thirteen hundred and nine dollars and thirty-nine cents ($1,309.39), and that the contract in respect to the moiety of said land, represented by the title bond of said W. G. Ward, filed with the plaintiff's bill as an exhibit, shall be specifically executed. It is, therefore, adjudged, ordered and decreed that the plaintiff, William L. Ward, do pay to the defendant, Jacob G. Ward, as executor of the last will and testament of W. G. Ward, deceased, the said sum of one thousand three hundred and nine dollars and thirty-nine cents, with interest thereon from the said 1st day of December, 1879, and to him the costs expended by W. G. Ward herein in his lifetime, and to the defendants their costs herein expended."

From this decree the plaintiff appealed to this Court.

*C. Boggess* for appellant cited 10 W. Va. 31–73, *Id.* 651 and 12 W. Va. 243.

*Cressap*, for appellees.

SNYDER, JUDGE, announced the opinion of the Court:

The appellant insists that there was no error on the face of the report, and, consequently, so much of it as was not excepted to by either party is presumed to be admitted by them, respectively, to be correct, and that it was, therefore, error for the court to remodel and restate the whole account without reference to the position taken and occupied by the parties in relation to said report.

The party complaining of a commissioner's report must point out the error of which he complains by exceptions thereto so as to direct the mind of the court to it, and when he does so the parts not excepted to are presumed to be admitted to be correct, not only as regards the principles but also as to the evidence on which such parts are founded.—

*McCarty* v. *Chalfant*, 14 W. Va. 531; *Chapman* v. *P. & S. R. R. Co.*, 18 *Id.* 185.

A commissioner's report, *if erroneous on its face*, may be objected to on the hearing, though not excepted to; but without such exception it cannot be impeached by adult parties on grounds and in relation to matters, which may be affected by extraneous testimony. *McCarty* v. *Chalfant, supra; Hyman* v. *Smith*, 10 W. Va. 298. When adult defendants fail to except to a report of a commissioner they are deemed to acquiesce therein, and they will not be permitted to impeach it either at the hearing of the cause or in the appellate court except for errors apparent upon its face. *Wyatt* v. *Thompson*, 10 W. Va. 645; *Laidley* v. *Kline*, 8 *Id.* 218; *Penn* v. *Spencer*, 17 Gratt. 85; *Ogle* v. *Adams*, 12 W. Va. 213.

In *Perkins* v. *Saunders*, Tucker, Judge, in delivering the opinion of the court says: "I have considered it as a settled principle that this court will not enter into an examination of accounts referred to a commissioner, and settled by him, unless an exception to them has been taken in the court of chancery, nor then, unless the exception be so stated as that this court may decide upon the equity, or legality, of the principle only, upon which the article is admitted or rejected, without wasting their time in adjusting the *particulars* of a long and intricate account—a business which is the peculiar province of a commissioner and accountant—and which, if this court were to admit themselves to be bound to engage in, would in a year or two put a total stop to the administration of justice in civil causes in this commonwealth." 2 H. & M. 422; 14 W. Va. 559.

The foregoing principles, for the most part, have reference to appellate courts, but it seems to me the same reasons, which make them proper and necessary for the disposal of the business in those courts, would require their observance in courts of original jurisdiction, the judges of which have as little and, perhaps, less time and fewer facilities for making calculations and unravelling tedious details of complicated accounts. The main object of referring a cause to a commissioner is to relieve the court of such labors. In almost every settlement a large portion of the items are undisputed, and the commissioner having the parties before him can more

readily than the court ascertain and eliminate the undisputed from the controverted matters, and then report upon the whole according to his best judgment, leaving it to any party dissatisfied with any part of the report to except thereto, so as to direct the mind of the court to the precise subject of dispute. In some instances the controversy is confined wholly to questions of law and in others to matters of fact. In either case, if the parties are *sui juris,* and no error appears on the face of the report, it is taken to be *prima facie* correct, and, if no exception is taken thereto, it is confirmed as of course without an examination of the proofs by the court. This is done upon the presumption that the parties by making no objection concede the correctness of the report. And for the same reason, if any part of the report, or separate items thereof, remains unexcepted to such part, or such items, will be regarded by the court and may be treated by the parties as admitted to be correct. The court will not permit any party to impeach a report, correct on its face, as to any matter which may be affected by extraneous evidence unless notice has been given thereof by exception before the hearing. The evident purpose of this rule is to prevent surprise and require the parties to deal frankly with each other and not permit the laying of a trap to obtain an undue advantage at the last moment when all explanation is precluded. It is just as essential to the ends of justice and the due administration of the law that the court should observe this rule as it is for the court to require its observance by the parties. If the court can at the hearing ignore the report and disregard the effect thereof as to the parts not excepted to, the surprise upon the parties may be as great and the result as detrimental as if the court, at the instance of a party, had permitted objections to be taken at the hearing as to matters not excepted to and which might be affected by extraneous evidence. It seems to me, therefore, that the report of a commissioner on the face of which no error appears, and which is made in a cause rightly referred, must be treated by the court as well as the parties, at the hearing, as correct, not only so far as it settles principles, but, also, in regard to the sufficiency of the evidence upon which it is founded, except in so far, and as to such parts thereof, as ob-

jection may have been taken by proper exceptions filed
by any party; and the court is as much bound by the
report so unexcepted to, in whole or in part, as are the parties
themselves, and it is error for the court, at the hearing, to
remodel and restate the whole account without reference to
the report or the action of the parties in excepting or not ex-
cepting thereto.   If in any case the court is not satisfied with
the report in regard to matters not excepted to and which
might be affected by evidence *aliunde*, it should recommit it
with instructions indicating its opinion, so that the respec-
tive parties might have an opportunity of meeting any new
phase of the matters thus suggested.

In the case at bar I am of opinion, that the complicated
condition of the accounts between the parties and the vol-
uminous and contradictory character of the testimony in re-
lation thereto fully warranted the reference to a commis-
sioner.   The parties are all *sui juris*; and they having availed
themselves of their legal rights by excepting to such parts of
the report, as they deemed to be erroneous, the parts not ex-
cepted to were presumed to be admitted by them to be cor-
rect.   In this condition of the cause the court made a state-
ment of the accounts between the parties which it made the
basis of the decree of December 6, 1879.   This statement
was obviously made without reference to the report or the
exceptions filed thereto.   It seems to be founded entirely
upon the court's estimate of the proofs in the cause, because
it introduces items not allowed by the commissioner and not
excepted because not allowed, and it excludes others allowed
by the commissioner and not excepted to by any party.   The
parties, in the absence of any exception had a right, as we
have seen, to rely upon the sufficiency of the evidence to
sustain such parts of the report as were not excepted to; con-
sequently, the court erred in disregarding the report and
entering a decree founded on its own statement of the
accounts between the parties without reference to said report
or the implied admissions therein of the parts not excepted
to, especially as the facts might have been explained or
changed by extrinsic evidence.

Proceeding now to dispose of the exceptions to the report
of Commissioner Jones as the circuit court should have done,

this Court is of opinion that the plaintiff's *first, second, fourth* and *fifth* exceptions and the *seventh* in part, are well taken and must be sustained. The *first,* because the rule upon which the commissioner computed the interest on the balances therein specified amounts to compounding and is, therefore, illegal and erroneous. The proper rule for computing interest, where partial payments have been made, is to deduct the payment from the aggregate sum of principal and interest, computing the latter to the date of the payment, and the balance forms a new capital; on that interest is to be computed from that time to the next payment, and so on for each payment; but with this caution, that the new capital be not more than the former, so that if the payment be less than the interest due at the time, the excess of interest must not augment the remaining capital, because that would be to give interest upon interest which would be unlawful. When the payment is less than the interest accrued on the principal at the date of the payment, no stop should be made, but the interest should be computed until the payments, whether one or more, are sufficient to absorb the whole of the interest and then the same should be deducted from the sum of principal and interest—*Lightfoot* v. *Price*, 4 H. & M. 431; *Hurst* v. *Hite*, 20 W. Va. 183.

The *second* and *fourth* because Washington G. Ward in his answer to the plaintiff's bill expressly admits that the plaintiff paid for him thirty-seven dollars and fifty cents to Caleb Boggess and sixty-five dollars to R. S. Ward.

The *fifth,* because the one thousand dollars referred to in this exception was charged on the account presented to said Washington G. Ward in 1869, when a settlement was attempted between said Ward and the plaintiff, and it was, also, asserted in the plaintiff's bill and charged on the account filed therewith, and its correctness was not questioned except by implication, in the answer of said Washington G. Ward to plaintiff's bill, although he specifically and expressly disputed many other items of said account of smaller amounts and less importance. Nor was its correctness disputed by said Ward at said attempted settlement or objected to so far as can be ascertained from the testimony of A. Hutton and the defendant Jacob G. Ward both of

whom were present on that occasion. The sum is so large that it is not at all probable it would have been allowed to stand without objection on these occasions, while a number of smaller items were objected to and declared erroneous, unless it had been a proper charge. I am very much inclined to believe that this one thousand dollars represents the payment referred to in the deposition of H. Snyder as paid by him for the plaintiff to said Ward. The sum is not precisely the same but the small difference may be readily accounted for by the interest which accrued between the date at which it is charged and the time of the actual payment by Snyder. The title-bond given but a few weeks before required a payment in excess of this sum at the date of this charge. It is not likely that the plaintiff would wholly fail to meet any part of such a large payment upon a contract so recently made. It is more likely the arrangement to meet it had been made at the time the contract was entered into. I think, therefore, this item of one thousand dollars paid November 1, 1857, should be allowed.

The *seventh* exception, except as to the item of ten dollars, alleged to have been paid in October, 1865, should be sustained. The said item of ten dollars was disputed in the answer of Washington G. Ward and is proved to be incorrect by J. G. Ward to whom it is alleged it was paid. Neither of the other items in said exception are expressly denied by said W. G Ward in his answer to plaintiff's bill, nor does it appear that he objected to any of them when presented to him by Hutton for settlement in 1869, although other items on the account were then disputed.

The plaintiff's *third*, *sixth* and *eighth* exceptions must be overruled. The *third*, because the two hundred and fifty dollars therein referred to was denied and declared erroneous by W. G. Ward when presented to him by Hutton, and there is no evidence to sustain said item or controvert said denial.

The *sixth* is not well taken for the reasons hereinafter stated in considering the defendant's exception. And the *eighth* is simply an assertion in regard to the evidence and is too general and indefinite to constitute a sufficient exception to a report. *Sandy* v. *Randall*, 20 W. Va. 244.

The defendant's exception to said report must be sustained, because the proof, if it has any relation whatever to the one thousand five hundred dollars excepted to, is wholly insufficient to establish it as a proper charge. The circumstances tend strongly to cast suspicion upon this item and the seven hundred dollars mentioned in the plaintiff's sixth exception, if they do not fully condemn them. It is shown conclusively that neither of these large items was charged on the account of the plaintiff, which was furnished to A. Hutton in 1869 to settle by, nor was either on the account as originally filed with the plaintiff's bill. They were not on said account when Washington G. Ward answered the bill; and they were never claimed or asserted until after the death of said Ward, who was, perhaps, believed to be the only person that could show their injustice. After the death of the original defendant they seem to have been surreptitiously added to the account filed with the bill at the foot of the other charges. In the answer subsequently filed by the executor, Jacob G. Ward, he positively denies the correctness of both these items. The testimony by which they are attempted to be supported is altogether too vague and conjectural to establish such large items which, if correct, it may well be presumed could be proved with more certainty. J. W. Marshall, by whom it is alleged the one thousand five hundred dollars was paid, proves nothing in support of any such payment. His testimony may relate to a different transaction and with equal propriety might be invoked to prove any other charge on the plaintiff's account. Much of the other testimony is very improbable and much discredited if not successfully impeached by the defendants' proof and the circumstances in the cause. Upon a careful consideration of all the evidence I am clearly of opinion that the said items of seven hundred dollars and one thousand five hundred dollars should each be disallowed.

I am, therefore, of opinion, for the errors aforesaid, that the decree of December 6, 1879, should be reversed with costs to the appellant against the appellee, Jacob G. Ward, executor of Washington G. Ward, deceased, to be levied of the goods of his testator in his hands to be administered, and that the cause be remanded to the said circuit court of Randolph county with directions to said court to recommit the

report of Commissioner Jones to him or some other commissioner with instructions to such commissioner to reform said report and account and ascertain the balance between the plaintiff and the estate of said Washington G. Ward, deceased, according the principles of this opinion and report to said court; and that the cause be further proceeded in in said circuit court in accordance with the rules and practice in courts of equity.

JUDGES JOHNSON AND GREEN CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.