## CHARLESTON.

ALEX. AND WILLIAM ANDERSON *v.* CARAWAY, ADM'R.

Submitted January 15, 1886.—Decided February 6, 1886.

*(SNYDER, JUDGE, Absent.)*

1. Where the report of a commissioner is not excepted to, while it is retained in his hands for examination, before it is returned into court, the evidence, which was before him, on which he acted in making it, is no part of his report, unless required to be so made by order of the court, or it be so made by the commissioner. (p. 394.)

2. No exceptions having been filed to the report of a commissioner, while it is so retained in his hands, before he returns the same to court, it is not his duty, unless so required by the court, to return with it the evidence, which was before him, on which he acted in making his report; and if it be afterwards excepted to, the

---

court in considering such exceptions will only regard such errors as appear upon the face of the report; and in such a case the report can not be impeached on grounds or in regard to matters, which may be affected by extraneous evidence. (p. 394.)

3. Where the owner of lands has suits pending between him and other parties claiming the same lands, employs counsel to prosecute his suits to recover the same, and contracts to pay him certain fees for his services as such counsel, the amount of which are wholly or in part contingent upon the recovery of the land in controversy, such contract is not *champerty.* (p. 397.)

4. Where J. G., a tenant in common with J. A., of lands, for the recovery of which it is necessary to bring and prosecute suits against other parties claiming the same lands, accepted and agreed to act under a power of attorney for J. A. authorizing him to sell, assign and transfer the interest of J. A. in said lands, and at the expense of J. G. to sue for, and recover the same from every incumbrance that other persons may have thereon, but without any compensation therefor, such agreement or contract is not *champerty.* (p. 397.)

*J. W. Davis* for appellant.

*R. F. Dennis* for appellees.

WOODS, JUDGE:

Wright Southgate died in 1811, having by his will, among other things devised all his real estate to his five children, Hannah Wright Southgate who afterwards intermarried with one Leroy Anderson, William Southgate, Benjamin Southgate, George Southgate and James Southgate, with provision, that if any of his said children should die unmarried, the share of each of them so dying, should go to the survivors of said children. At the time of his death he was the owner of eleven tracts of land containing 1,000 acres each. Before the year 1825 William Southgate died unmarried and his interest in the lands passing to his surviving brothers and sister, each became the owner of an undivided fourth part thereof. On October 25, 1825, George Southgate, by a written agreement signed by him, in consideration of $300.00, sold his undivided fourth part of ten of 1,000 acre tracts of land devised to him by Wright Southgate to one John Anderson, who also claimed to have acquired from George and James Southgate, an undivided interest of 500 acres in lot " No. 2," another tract of 1,000 acres. Some time before Decem-

ber 21, 1847, Benjamin Southgate who owned an undivided fourth part of the lands died unmarried, and one third of his fourth part of the lands passed to James, George and Hannah Wright Southgate, whereby James and Hannah each became entitled to one third, and George to one twelfth of said lands. On December 21, 1847, James Southgate and John Guinn entered into an agreement under their hands and seals, whereby James Southgate for the consideration of $1,708.00, sold and agreed to convey all his right, title and interest in, and to one undivided third interest in ten tracts of land of 1,000 acres each, and in and to one undivided third of one fourth in one tract of 1,000 acres being lot " No. 2." On February 19, 1845, John Anderson by a writing under his hand and seal endorsed on his contract of purchase from George Southgate, for value received, assigned the same to his sons Alexander and William Anderson. On January 21, 1848, John Anderson executed to John Guinn a power of attorney, authorizing him as his attorney, for him and in his name to sell, assign and transfer, with his consent, his interest in said eleven tracts of land, granting him power to bring suits to recover the same and to remove any and all claims and incumbrances therefrom ; all costs incurred in the prosecution of such suits to be paid by Guinn. Many portions of these lands were claimed by one Mann and others, whose interests he controlled amounting to nearly 5,000 acres, and to settle and establish the rights of the several claimants thereto various actions of trespass and of ejectment were instituted and prosecuted by Guinn and the heirs of Southgate on one side and Mann and those claiming under him on the other. Mann and Guinn on June 15, 1870, entered into an agreement under seal, whereby this controversy was compromised and settled upon the following terms: All the suits whether of trespass or ejectment were to be dismissed agreed, each party paying his own costs, and Mann to pay Guinn and the heirs of Southgate seventy five cents per acre for all the lands, which may be ascertained to be in conflict between Mann in his own right and as the representative of John Miller and Alexander Miller, and Guinn and the heirs of Southgate, the sum, when ascertained, to be paid one third cash, and the residue in one and two years with interest,

the expenses of the surveying necessary to ascertain the quantity of land in conflict to be paid in equal portions by Guinn, and the heirs of Southgate. Guinn and Mann having died before the quantity of land in conflict was ascertained, Guinn's administrator Ballard Caraway in an action against Mann's executors for the purpose, tried on November 10, 1876, ascertained the number of acres in conflict to be 4,911, and the price thereof to be $3,683.25, for which sum he recovered in the circuit court of Greenbrier county a judgment against Mann's executors with interest from November 10, 1876, until paid and costs. A. C. Snyder was appointed a special receiver to enforce and collect this judgment, who on June 6, 1878, collected $1,300.00 thereof and the residue is uncollected. At the September rules, 1878, said Alexander Anderson and William Anderson filed their bill in the circuit court of Greenbrier county against Ballard Caraway as the administrator of John Guinn deceased and A. C. Snyder, which was subsequently amended by making George Southgate a defendant. The bill substantially alleges the purchase of the undivided fourth part of the eleven tracts of land by their father John Anderson from George and James Southgate, and the execution of the written agreement of sale dated October 25, 1825, and the assignment thereof to them on February 19, 1845, for value received, the execution of the power of attorney to Mann for the purposes therein stated; that he acted under it—brought, prosecuted and defended the action against Mann, and also the compromise affected on June 15, 1870, whereby he sold the lands purchased by their father and then owned by them, as hereinbefore stated, and claimed that they were entitled to receive one fourth part of the purchase-money recovered by the administrator of Guinn from the executors of Mann when the same should be collected by the special receiver, and prayed that the amount due to them might be ascertained and paid to them out of the moneys collected on said judgment, and for general relief and that in the meantime, and until the amount due them can be ascertained the receiver be enjoined from paying over to the administrator so much thereof as will be sufficient to satisfy the amount due to them. The preliminary injunction prayed for was allowed as to the sum of $1,200.00, upon the usual terms.

The administrator of Guinn demurred and answered the bill. The answer is a general denial in the whole and in detail of every allegation in the bill, most of which seems to have been made in ignorance or in reckless disregard of the facts, as during the progress of the cause they appeared in evidence.

On November 13, 1878, the cause was referred to a commissioner to ascertain and report how much of the land mentioned in the bill as owned or claimed by John Anderson in his lifetime, purchased by him from George Southgate or the heirs of Southgate, were covered by the title of Mann or by the title of John and Alexander Miller, or either of them, and what the same would amount to at seventy five cents per acre with interest from November 10, 1876, and what proportion of the costs of the various suits referred to in the bill were paid John Anderson in his lifetime, or by the plaintiffs since his death; and also whether the agreement of sale filed with the bill as Exhibit "1" was executed by George Southgate, and whether the same was assigned to the plaintiffs by John Anderson, and whether he ever paid George Southgate the purchase-money for these lands?

On December 26, 1878, W. W. Gordon filed his petition in the cause claiming a lien on the fund in this cause, as counsel for Guinn, in the several suits out of which the fund was realized, and filed therewith the obligation of Guinn dated October 15, 1869, showing his retainer as such counsel, and the amount of his fees. A similar claim, for services, rendered Gwinn, by Hon. George H. Lee, as his counsel in the same controversies, was preferred before the commissioner. The amount which might be ultimately decreed to the plaintiff, William Anderson, was claimed by the administrator of Andrew Surbaugh, and by J. M. Sydenstricker, who filed their respective petitions asking that the same might be paid to them.

Henry, Washington and Mrs. Leroy Anderson, the heirs at law of Hannah Wright Southgate, also filed their petition claiming one-third of the $3,683.25, and prayed that the same might be paid to them.

The commissioner on May 15, 1879, completed his report, and on the 27th of the same month the defendant, Caraway,

administrator of Guinn, excepted thereto.   On November 6, 1879, the cause was again heard, upon all the pleadings, orders, proceedings and papers in the cause, and upon the depositions, exhibits and upon the commissioner's report and the exceptions thereto; and without passing upon the exceptions, the court re-committed the report to the same commissioner to state and report :

First.—What amount, if any, of the judgment in the bill mentioned is due to the plaintiffs, William and Alexander Anderson.

Second.—Whether William Anderson's portion should be paid to the administrator of Surbaugh or to John M. Sydenstricker.

Third.—What interest, if any, the petitioners, Henry, Washington and Mrs. Leroy Anderson have in the fund or judgment in the bill mentioned.

Fourth.—What interest, if any, W. W. Gordon has in said fund, and whether any, and if any, what portion of his debt should be paid by the plaintiffs.

Fifth.—Whether George H. Lee is entitled to any portion of this fund, and if any, how much ?

"For the purpose of ascertaining these matters, said commissioner may examine all the papers and depositions now in the cause and hear any further proof that may be offered, and take any other depositions."

The commissioner returned and filed his second report on April 8, 1880, wherein he reported the number of acres in conflict with the lands claimed by Mann to be 4,863, and the value thereof at seventy-five cents per acre to be $3,657.25, with interest from November 10, 1876, amounting on June 1, 1880, to $4,438.06, of which one-fourth was due the plaintiffs in equal portions, and one-third was due to the petitioners, Henry, Washington and Mrs. Leroy Anderson ; that on June 1, 1880, there was due W. W. Gordon $1,597.50, and to George H. Lee $386.16, which were to be paid by the administrator of John Guinn and said petitioners in proportion to the amounts due to them respectively; that the amount due to the plaintiff, William Anderson, should be paid to his assignee, John M. Sydenstricker, and that all former costs, taxes and expenses incurred in the suits to es-

tablish the title to the Southgate land had been paid in nearly equal portions by John Guinn and John Anderson, and that nothing on that account was due from the one to the other. To this report Gordon, and the administrator of Guinn excepted; the latter on May 24, 1880, but the date of the former does not appear, but the exceptions of both are in substance that there is not sufficient evidence on the record to justify the findings of the commissioner.

On June 12, 1880, the cause was finally heard, when the court overruled the exceptions, confirmed the commissioner's report, and decreed that special receiver Snyder, collect the said judgment, and out of the proceeds pay the plaintiffs $1,109.51, with interest from June 1, 1880, and their costs, but that one-half of said $1,109.51 being the share of William Anderson be paid to J. M. Sydenstricker; that he pay to the petitioners Anderson $599.14, with interest as aforesaid, being the amount due to them after deducting $880.21 to pay their proportion of the debts due to Gordon and Lee; and *third* pay the balance of said judgment ratably to W. W. Gordon on his debt of $1,597.50, and George H. Lee's administrator on his debt of $368.16; and if the said balance be insufficient to pay the whole of the debts due Gordon and Lee, what may remain unpaid shall be paid out of money in the hands of receiver Snyder belonging to the estate of John Guinn, and if any balance remain unsatisfied leave was reserved to Gordon and to Lee's administrator to prosecute their claims against the estate of said Guinn. To the decrees of November 13, 1878, and of June 12, 1880, the administrator of John Guinn, has obtained an appeal to this Court.

The appellant has assigned *thirteen* grounds of error in said decrees. It is unnecessary to notice all of them in detail.

The first error assigned is that the court refused to dissolve the injunction awarded to restrain special receiver Snyder from paying to the administrator of Guinn the sum of $1,200.00, until the rights of the plaintiff could be ascertained. The answer to this, is found in the fact that the amount of the fund in controversy was a trust fund, more than half of which was ascertained to belong to the plain-

tiffs and to the heirs of Hannah Wright Southgate, and being
then under the control of the court, in the hands of its re-
ceiver, it was the duty of the court to retain control over it,
until it could determine whether any portion, and if any,
how much of it belonged to the plaintiffs. When this was
done it dissolved the injunction. To have done it sooner
might have placed the fund beyond the reach of those en-
titled to receive it. The circuit court did not err in its decree
of November 13, 1878, in refusing at that time to dissolve
the injunction. The third, fourth, fifth and sixth errors
assigned are all included in the *second*, that the court erred in
overruling his demurrer to the plaintiff's bill, because the
heirs of John Guinn were not made parties; because if the
plaintiffs had a lien on the fund they ought to have filed
their claim in a suit already brought and pending in Fayette
county to administer and settle the estate of John Guinn,
and to sell his lands to pay his debts, and because there was
no priority between John Anderson and the plaintiffs. The
demurrer admits the truth of the allegations of the bill to
the full extent of every fact provable under it. The bill
alleges the purchase of the lands by John Anderson, the
transfer of the title bond therefor to the plaintiffs for value re-
ceived, the execution of the power of attorney by their father
to Guinn to establish the titles thereto and to sell the same; the
acceptance of the power of attorney by Guinn, and all the acts
under it, and the plaintiffs claim the proceeds arising from the
sale of their interest in the land and thus ratify and confirm
all acts of John Anderson and John Guinn transacted or done
by them in regard thereto, and it does not lie in the mouth
of John Guinn after he has sold their land under that au-
thority to deny their right to the proceeds of the sale thereof.
Neither was it necessary or proper that the heirs or creditors
of Guinn should have been made parties to the plaintiff's
bill, or that the plaintiffs should have filed or preferred their
claim in the suit brought to settle the estate of Guinn and to
sell his lands for the payment of his debts. The plaintiffs
were in no proper sense creditors of John Guinn. Neither
he nor his estate was indebted to the plaintiffs; he had not
succeeded in getting into his hands any moneys belonging to
the plaintiff, and the very purpose of this suit was to prevent

his estate from becoming indebted to the plaintiffs, and for this reason neither his heirs nor his creditors had any interest in the controversy.    The allegations of the bill being admitted by the demurrer to be true, one fourth of the fund in controversy was the purchase-money of the plaintiff's land and not having been received by Guinn, never became part of his estate, and therefore neither his heirs nor creditors were proper parties to the plaintiff's bill.    The circuit court did not err in overruling the demurrer.

The seventh, eighth, ninth tenth and twelfth assignments together constitute but one ground of error, and that is, that the findings of the commissioner upon the several questions of fact referred to him were not warranted by the evidence appearing in the record.    If it was now an open question, and we were required to pass upon the correctness of the findings of the commissioner, upon the proofs appearing in the record, on November 6, 1879, when the last order of reference was made, we would be obliged to hold that all his findings were fully warranted thereby, as the only points upon which there could have been any doubts, viz: whether the petitioners, Henry, Washington and Mrs. Leroy Anderson were the heirs of Hannah Wright Southgate, and whether W. W. Gordon and George H. Lee really rendered to John Guinn the services for which they respectively claimed compensation were by the appellant expressly admitted to be true in the last decree appealed from.    But it will be borne in mind that all the questions referred to the commissioner were in regard to these matters that could be affected by extraneous evidence; that neither of the orders of reference required the commissioner to return, nor did he in fact return with his report, the evidence that was before him, on which he acted in making up his report, and therefore the circuit court could not know, and this Court can not know what evidence was before, or considered by the commissioner, other than what was in the record which the commissioner in the last order of reference was specially authorized to examine.    The commissioner's last report was completed on February 16, 1880, and was retained in his office until April 8, 1880, when the same was returned and filed.    On May 24, 1880, the appellants excepted to his findings on these questions of fact

because they were not supported by the evidence, and because the commissioner had not reported the evidence on which he acted. If the appellant desired that the commissioner should return with, or as part of his report, the evidence that might be before him when making his report he should have had this direction given to him in the order of reference or by other order of the court. Or having failed or neglected to do this, he could have filed his exceptions to the report, after the same was completed, and during the ten days while the same remained in his office for examination, and if he had done so, it would have been the duty of the commissioner to return the exceptions with such remarks as he might have deemed pertinent, and the evidence relating thereto; but no such exceptions having been filed while the report remained in the hands of the commissioner, he was not required to return with his report the evidence which was before him, on which he acted, and the same formed no part of his report, not having been made so by the order of the court, nor by the report itself. Code, ch. 129, sec. 7; *Thompson* v. *Catlett*, 24 W. Va. 524. No exceptions to the report having been filed by the appellant, until the next term, after it was returned by the commissioner, the circuit court in considering the same could only regard such errors as appear on the face of the report, for in such case the report can not be impeached on grounds or in regard to matters which may be affected by extraneous evidence. *Chapman's Adm'r* v. *McMillan*, 21 W. Va. ——; *Ward* v. *Ward*, 21 W. Va. 262; *Thompson* v. *Catlett, supra.* It is not pretended that any errors upon the face of the report exist, and therefore the circuit court did not err in overruling the appellant's exceptions to the report of the commissioner. The only ground of error remaining to be considered is that the claims of the plaintiff, as well as those of Gordon and Lee, and of the petitioners Henry, Washington, and Mrs. Leroy Anderson are all barred by the statute of limitations.

The lands in controversy were by the will of Wright Southgate devised jointly to his five children and so far as this record shows, they have never been divided; and when George Southgate and James Southgate sold their undivided interests in these lands to John Anderson and to John Guinn respectively, they with the other devisees claimed and held

the lands in common.    No actual possession of the lands in conflict with the lands claimed by Mann seems to have been held by either the devisees or their vendees, and it was for the recovery of these lands from Mann that the several suits were brought in the names of the devisees of Southgate.    These controversies were settled by the compromise made on June 15, 1870, whereby Mann became the purchaser of all the lands in conflict at seventy five cents per acre, payable in one and two years after the number of acres in dispute could be ascertained, which was never in fact done until November 10, 1876, when the judgment of $3,683.25 for the purchase-money thereof was recovered.    The money specified in this judgment, though recovered in the name of Guinn alone, by the very terms of the contract of compromise was the property of Guinn, and of the heirs or devisees of Southgate, in proportion to their several interests in the lands sold by the compromise, to Mann.    John Guinn being dead when the judgment was recovered, the plaintiff within less than two years thereafter and before the judgment could be collected, brought this suit, setting up their interests therein, which never was any part of the estate of Guinn, and for the purpose of preventing the same from passing into the hands of his administrator.    The debt claimed by Gordon was secured to him by the obligation of John Guinn, dated October 15, 1869, which by the terms thereof did not become payable until June 15, 1870, when by said compromise Mann abandoned his claims, and purchased the land in controversy.    Little more than eight and a half years thereafter, on December 26, 1878, Gordon filed his petition in this suit for the recovery of his demand. George H. Lee had recovered a judgment for the amount claimed by him which bore interest from March 31, 1875, and the same was proved before, and allowed by the commissioner in his first report, made on May 15, 1879.    From these facts it is apparent that neither the plaintiffs nor the petitioners Henry, Washington, Mrs. Leroy Southgate, W. W. Gordon nor George H. Lee were barred by the statute of limitations from recovering their respective interests in the fund represented by the judgment of $3,683.25.    The last error assigned is the eleventh, viz: that the " contract was *champertous*, and therefore void, and should not have been

enforced." No such objection appears to have been made during the progress of the cause. It was an after thought, occurring for the first time in the assignment of errors. We can scarcely think that the appellant seriously intended to rely upon a proposition so groundless. Champerty is defined by Blackstone to be "a bargain with a plaintiff or defendant to divide the land or other matter sued for between them if they prevail at law; wherupon the champertor is to carry on the party's suit at his own expense." 4 Blk. Com. 135. Bouvier defines champerty to be a bargain with a plaintiff or defendant in a suit for a portion of the land or other matter sued for, in case of the successful termination of the suit, which the champertor undertakes to carry on at his own expense. 1 Bouvier's Dictionary. It was an indictable offence at common law, Blackstone, *supra*, and avoids contracts into which it enters.

It does not appear from this assignment of error, whether it was intended to apply to the contract between Guinn and Gordon contained in his obligation of October 15, 1869, or to the contract made between John Anderson and Guinn. In the contract with Gordon none of the elements of champerty appear. It was a simple retainer of Gordon as his counsel in the various suits with Mann for certain fees specified therein, contingent in amount and times of payment, upon the successful termination of questions in controversy. Gordon's whole duty was performed, and he became entitled to the compensation, when he discharged his duty as such counsel. He never undertook to carry on the suits or any of them at his expense, nor was he in any manner bound to do so, while the commissioner's reports clearly show, that these expenses were about equally borne by John Anderson and the plaintiffs on one hand and John Guinn on the other. The contract between John Anderson and Guinn, evidenced by the power of attorney to the latter, is equally free from all taint of champerty. By it Guinn then being a joint owner of the lands and equally interested with Anderson in their recovery, obtained no additional interest therein, or even compensation for his services, but simply obtained the right to represent the interest of Anderson in the lands, in the suits then pending. The advantages derived from the right

to control and represent the interest of a joint owner in the lands, in the conduct and management of the suits were probably more valuable to Guinn than the risk of one fourth of the costs which might be incurred in prosecuting them to a successful issue.   We are ot opinion that neither the contract between Guinn and John Andersen nor that between Guinn and Gordon was *champerty.*

For the reasons above stated we are of opinion, that there is no error in the decrees complained of, and the same must be affirmed, with costs to the appellees William and Alexander Anderson and $30.00 damages, to be levied of the goods and chattels ot John Guinn in the hands of his administrator to be administered.

AFFIRMED.