# CHARLESTOWN.

## THOMPSON'S ADM'R *v.* CATLETT.

Submitted January 24, 1884—Decided September 20, 1884.

(\*SNYDER, JUDGE, Absent.)

1. Where there is a contract for the sale of a tract of land by the acre, which is represented to contain a specified number of acres, and it is ascertained there is a deficiency in quantity, a court of equity of will even after conveyance is.executed abate the value of the deficiency at the stipulated price by the acre from the purchase-money remaining unpaid. (p. 539.)

2. A court of equity will not stay or prevent the collection of the purchase-money for the sale of land on the ground of defect of title, after the vendee has taken possession under a conveyance from his vendor with covenants of general warranty, unless the title is questioned by suit either prosecuted or threatened ; or *unless the purchaser can show clearly that the title is defective.* (p. 540.)

3. A. being the owner of a tract of land supposed to adjoin a tract of land owned by B. but which in fact covers a part of B.'s tract, which fact is well known to A., who afterwards enters into a contract with, and obtains a conveyance with covenants of general warranty from B. for all of his tract at a specified price by the acre, he will not be entitled to withhold payment of the purchase-money of so much of B.'s land as interlocks with A.'s land, upon the ground that A.'s title to the interlock held by him, before he made such purchase, is an older and better title than that derived from B., except upon the clearest

---

\*Counsel below.

proof, that the title so acquired from B. was absolutely defective. (p. 539.)

4. A commissioner's report, if erroneous upon the face thereof, may be objected to at the hearing although not excepted to, but unless excepted to, it cannot be impeached at the hearing by adult parties on grounds, which may be affected by extraneous evidence; and if such adult parties fail to except to the report they will be presumed to have acquiesced in its correctness, not only as far as it settles the principles, on which the account is stated, but also in regard to the sufficiency of the evidence upon which it is founded. (p. 540.)

5. After a commissioner has completed his report he is required by section 7 of chapter 57 of the Acts of 1882, to retain it ten days for examination, unless otherwise ordered by the court or agreed by the parties, during which time any of the parties may except thereto; and if excepted to, it is made the duty of the commissioner to return the exceptions with such remarks as he may deem pertinent, and the evidence relating thereto. (p. 541.)

6. If no exceptions be filed to a report, while the same remains in the hands of the commissioner, he is not required to return with his report the evidence which was before him, and on which he acted. · (p. 541.)

7. If the report of the commissioner is not excepted to, while it remains in his hands, the evidence that was before him, on which he acted, forms no part of his report, unless made so by the report itself or by the order of the court. (p. 541.)

WOODS, JUDGE, furnishes the following statement of the case:

On January 19, 1871, Joel McPherson and Samuel Thompson for the consideration of three thousand one hundred and thirty-five dollars, by deed of that date, with covenant of general warranty, conveyed to the defendants, Howell Fisher and · R. H. Catlett, one undivided half of a tract of land in Greenbrier county containing six hundred and twenty acres, and also the whole of another tract of land in said county, situated on the waters of the North Fork of Anthony's creek, a tributary of the Greenbrier river, adjoining the lands of Jacob Van Buren and others, supposed to contain seven hundred and thirty-five acres, which land was sold at the price of three dollars per acre to be thereafter surveyed. It was expressly stipulated in the deed, that "in the event said

tract of seven hundred and thirty-five acres should upon survey contain more than seven hundred and thirty-five acres, the said grantees should pay the grantors for the excess at the rate of three dollars per acre, and should the tract fall short of seven hundred and thirty-five acres, then the grantors were to pay to the grantees at the rate of three dollars per acre to make the tract contain seven hundred and thirty-five acres." This deed so made contained an exact description of both of said tracts by metes and bounds, and was duly recorded on January 28, 1871. At the time of the execution of said deed, the grantees paid to Samuel S. Thompson and Joel McPherson each the sum of five hundred and twenty-two dollars and fifty cents, and executed to each of them two obligations for the sum of five hundred and twenty-two dollars and fifty cents, dated January 19, 1871, payable respectively in one and two years thereafter with interest, the payment of which was secured by a vendor's lien upon said lands retained in said deed. The obligations executed to McPherson were paid as they fell due. On July 12, 1871, said Thompson for value received, assigned to Samuel Coffman the obligation of Fisher and Catlett of five hundred and twenty-two dollars and fifty cents, which was payable two years after the date thereof. The other obligation he retained at the time of his death. Samuel Coffman also died and the said obligation assigned to him fell into the hands of his administrator. The lands conveyed by said deed from the date thereof has remained in the undisturbed and undisputed possession of said Fisher, Catlett and their vendees, and no suit to evict them has ever been brought or threatened. The tract of seven hundred and thirty-five acres was granted by the commonwealth of Virginia to said McPherson by patent dated November 1, 1855, and the tract of six hundred and twenty acres was in like manner granted McPherson and two others, by patent, the date whereof does not appear. It further appears from the record in these causes, that on July 1, 1851, the said commonwealth granted to one John Mallow two thousand three hundred and ninety acres of land, and afterwards on December 1, 1852, it granted to him another tract containing one thousand one hundred and thirty acres, both situated in Greenbrier county. These two tracts of

land became the property of Jacob Van Buren, who on November 22, 1870, by deed of that date conveyed the same with other lands, to said Fisher and Catlett, covenanting with them " to warrant generally the lands thereby conveyed; that they have the right to convey the same to them; that the said vendees shall have quiet possession of the same free from all incumbrances, and that they will execute such further assurances of said land as may be requisite." For this land said vendees agreed to pay six thousand dollars, of which two thousand dollars were paid in hand, and the residue was to be paid in two equal annual installments with interest, secured by a vendor's lien retained on said land.

In October, 1881, William M. Coffman and A. H. Rader as the administrators of Samuel Coffman, and J. W. Johnston as the administrator of Samuel S. Thompson, severally filed their bills in the circuit court of Greenbrier county against said R. H. Catlett, and the administrator of Howell Fisher, then dead, and other defendants claiming under them to enforce payment of said two obligations of five hundred and twenty-two dollars and fifty cents each, held by their respective intestates, alleging the sale of said lands by said McPherson and Thompson to Fisher and Catlett at the price of three thousand one hundred and thirty-five dollars; the execution of said two obligations for the unpaid purchase-money due to Thompson; the assignment of one of them to said Samuel Coffman as hereinbefore stated; the execution of the deed, of which a copy was filed as part of the bills; the reservation of the lien; the non-payment of the obligations; the levy of attachments upon the interest of Catlett in other lands owned by him in said county, and praying for a sale of the said lands conveyed by McPherson and Thompson to Fisher and Catlett, and of so much of the lands attached as may be sufficient to pay the amounts due the respective plaintiffs, and for general relief.

None of the defendants having appeared in said causes, they were, on the 11th day of November, 1881, heard together, and the court entered therein the following decree:

"The orders of publication having been regularly taken and executed upon the non-resident defendants, and the subpœnas having been served upon the home defendants, and the said

defendants still failing to appear and answer plaintiffs' bills, the said bills are taken for confessed as to the said home defendants; and these two causes having been regularly matured and set down for hearing at rules, came on this the 11th day of November, 1881, to be heard together upon the subpœnas executed, the orders of publication, regularly taken and executed, and the bills taken for confessed, as aforesaid, the exhibits, the orders of attachment sued out and levied, and were argued by the plaintiffs' counsel. And it appearing to the court that there is due from the defendant, R. H. Catlett, and from the estate of Howell Fisher, deceased, to the plaintiffs in each of said suits, respectively, the sum of five hundred and twenty-two dollars and fifty cents, with interest thereon from the 19th day of January, 1871, until paid, which said sums amount, each, as of this date, principal and interest aggregated, to eight hundred and sixty-two dollars and ten cents, and that the plaintiffs have and hold therefor vendor's liens upon the undivided one half of two tracts of land, containing in the aggregate one thousand and forty-five acres, situated on the North Fork of Anthony's creek, which were sold and conveyed by the said S. S. Thompson and Joel McPherson to the said R. H. Catlett and Howell Fisher, and that by virtue of the attachments sued out and levied as aforesaid, they also have liens upon the interest, being an undivided one sixth of the defendant, R. H. Catlett, in various tracts of land in the bill and proceedings in these causes, and hereinafter in this decree mentioned. Upon consideration thereof, it is adjudged, ordered and decreed that the said plaintiffs, in each of these suits, do recover severally and respectively from the defendant, R. H. Catlett, as a non-resident, and from the estate of Howell Fisher, deceased, the said sums of eight hundred and sixty-two dollars and ten cents, with interest on each of said sums from this day until paid, and the costs of these suits, and unless the said defendants, or some one for them, shall within thirty days from this date pay the said sums of money with interest and costs as aforesaid, then Alex. F. Mathews, who is hereby appointed a special commissioner for the purpose, shall proceed, after having first advertised the time, terms and place of sale for four consec-

utive weeks in the *Greenbrier Independent*, and by a notice posted for the same length of time at the front door of the court-house of this county, to sell, in front of the hotel of James H. Stratton, in the town of Lewisburg, at public auction to the highest bidder, upon a credit of six, twelve and eighteen months, except as to so much to be paid cash in hand as may be necessary to pay the costs of suit and expenses of sale, the following lands, or so much thereof as may be necessary, and in the following order:

"1st. The undivided one half interest in the two tracts, containing in the aggregate one thousand and forty-five acres, situated on the North Fork of Anthony's creek, which were conveyed by Joel McPherson and wife and S. S. Thompson and wife to R. H. Catlett and Howell Fisher. 2d. The interest of R. H. Catlett being an undivided one sixth in a tract, on the waters of Anthony's creek, conveyed to said R. H. Catlett and Howell Fisher by James Scott, by deed dated November 22, 1870, and containing six hundred and eighty-seven and one fourth acres. 3d. A like interest of R. H. Catlett in a tract of one thousand three hundred and ninety-five acres, on the waters of Anthony's creek, conveyed to said Catlett and Fisher by Jesse Hull and Wm. E. Boswell, by deed dated November 22, 1870. 4th. A like interest of R. H. Catlett in four thousand acres on the waters of Anthony's creek, conveyed to said Catlett and Fisher by Jacob Van Buren, by deed dated November 22, 1870. 5th. A like interest of R. H. Catlett in one hundred and fifty-five acres, on the waters of Anthony's creek, conveyed to said Catlett and Fisher by R. H. Maury, by deed dated December 15, 1870. 6th. A like interest of R. H. Catlett in one hundred and fifty-five acres, on the waters of Anthony's creek, conveyed to said Catlett and Fisher by Thos. Mathews, by deed dated January 16, 1871. 7th. A like interest of R. H. Catlett in one hundred and thirty-four acres, on the waters of Anthony's creek, conveyed to said Catlett and Fisher by Moses H. and John F. Perry, by deed dated November 22, 1870. 8th. A like interest of said Catlett in two hundred acres on the waters of Anthony's creek, conveyed to said Catlett and Fisher by Elizabeth May, Moses H. and John F. Perry by deed dated November 22, 1870.

67

"And the said commissioner shall take from the purchasers bonds with approved security for the deferred payments, and report his proceedings under this decree to the next term of this court. But before receiving any money under this decree the said commissioner shall give bond in the penalty of three thousand dollars with security to be approved by the clerk of this court, conditioned according to law. And upon the coming in and confirmation of said report of sale to be made as aforesaid, the said commissioner shall withdraw the said sale bonds, collect the same as they fall due and out of the proceeds pay, first, to the said plaintiffs ratably the amounts hereinbefore decreed to them, with the interest that shall have accrued thereon, and bring the balance if any into court, subject to its future order. And when all the purchase-money shall have been paid, as aforesaid, then the said Alex. F. Matthews, commissioner for that purpose, shall make to the purchaser or purchasers a deed, or deeds in fee simple with special warranty of title for said lands, for which the grantees in each of said deeds shall pay him a fee of five dollars. But before selling any of said lands except the undivided one half of said tract of one thousand and forty-five acres, the said plaintiffs or some one for them shall give bond with security to be approved by the clerk of this court in the penalty of three thousand dollars, with condition that said plaintiffs will perform such future orders as may be made by the court in these causes in case the said R. H. Catlett appear and make defence therein within the time prescribed by law."

Soon after the rendition of this decree the defendant Catlett, who was a non-resident, appeared and filed his petition in said causes, asking that it be taken as his answer to said bills, setting forth his defence to the claims of the plaintiffs alleged in said bills, and praying for the reasons and matters contained therein, "that the said decree might be reversed and set aside, that said bills be dismissed, and for all such other, further and general relief as is equitable and just and applicable to his case." The matters of defence alleged by him in said petition, which was allowed to be taken as his answer, were as follows: "On or about the 19th day of January, 1871, your petitioner and Howell Fisher, in his life

time, purchased from one Joel McPherson and Samuel S. Thompson, the intestate of the plaintiff in the first of these causes, seven hundred and thirty-five acres of land, also an undivided half of six hundred and twenty acres lying in said county of Greenbrier, at three dollars per acre. The land was bought by the acre at the price aforesaid, and it was agreed, as is expressed in the deed exhibited with the bill of both plaintiffs, that if there was an excess over and above seven hundred and thirty-five acres in the first tract, that such excess was to be paid for at three dollars per acre, and if there was a deficiency, the purchase price was to be credited by the number of acres lost at three dollars per acre.

"By reference to the deed of January 19, 1871, filed as an exhibit with the plaintiffs' bill, it will be seen that the seven hundred and thirty-five acre tract adjoins the lands of Jacob Van Buren and others. The tract of land owned then by Jacob Van Buren was held by an older and better title than the title said Thompson and McPherson to the seven hundred and thirty-five acre tract, and by a survey as is provided for in said deed of January 19, 1871, it is ascertained that there is an interlock, and that two hundred and sixty-nine of the seven hundred and thirty-five acre survey is covered by the Van Buren title, and instead of getting seven hundred and thirty-five acres under their purchase from said Thompson and McPherson, your petioner and said Fisher only acquired title to four hundred and sixty-six acres, a deficit of two hundred and sixty-nine acres, which, at three dollars per acre, amounts to eight hundred and seven dollars.

"Your petitioner and said Fisher had before purchased the Van Buren tract, and paid for it, including the said interlock of two hundred and sixty-nine acres, and this amount should now be credited (269 A., at $3 per acre, $807,) upon the bonds, as of their date, in the said bills mentioned—otherwise the two hundred and sixty-nine acres are twice paid for—and your petitioner avers that at the time he and Fisher purchased the seven hundred and thirty-five acres from McPherson and Thompson, and at the time their deed was accepted, and at the time he and Fisher paid McPherson his proportion of the purchase-money, he did not know, nor did

the said Fisher know, that any part or portion of the McPherson and Thompson tract was covered by the Van Buren title, or by the deed of Van Buren to them.

"Again, the said Samuel S. Thompson is indebted upon other transactions in the sum of $——— to your petitioner, and in the sum of $——— to your petitioner and the estate of said Fisher; that his estate is utterly insolvent, and your petitioner has the right to offset the demands of the plaintiffs by these sums.

"Then there were a large number of judgments obtained against the said Thompson, and duly docketed in said county of Greenbrier prior to their said purchase, and the administrator of one Nelson Tinsley instituted his suit in chancery to enforce these judgment-liens against these lands. A decree was rendered in this cause, directing the lands to be sold to satisfy these liens, by a commissioner appointed for the purpose. The lands were sold, and your petitioner and the said Fisher became the purchasers, at the price of five hundred and eighty-seven dollars and seventy-two cents, which was paid in full to the commissioner of the court. Thus the deed from said Thompson was worthless, and conveyed nothing; the consideration of the bonds failed, and they should not, for this reason, be enforced. The only valid title is the commissioner's deed made under a decree in the said cause of *Tinsley's adm'r* v. *Thompson.*

"But, suppose your petitioner is wrong in this view, by crediting the said bonds on the purchase-money, with the amount paid to said Thompson in cash, which was five hundred and twenty-two dollars and fifty cents, by the amount still due from him on his estate to your petitioner and the said Fisher, by the deficiency in the land, at three dollars per acre, by the amount paid to discharge the judgment-liens on said land, and there is nothing due on the bonds sued on, and filed with the said bills. The record of the cause of *Tinsley's adm'r* v. *Samuel S. Thompson* is here filed as a part of this petition."

To this petition and answer both of the plaintiffs filed a special reply in writing, whereby they positively and particularly denied every allegation set forth in said petition tending to show that said Catlett was entitled to any of the credits

or set-offs, mentioned in said petition, or to any of the relief prayed for.

In June, 1882, the defendants took the depositions of Jesse Bright and of defendant, R. H. Catlett. The witness, Bright, proved that he was a surveyor; that he is familiar with said surveys granted to John Mallow of two thousand three hundred and ninety acres and one thousand one hundred and thirty acres, and of the tract of seven hundred and thirty-five acres granted to Joel McPherson; that in running out said surveys he found an interlock of two hundred and sixty-nine acres between the Mallow and McPherson surveys; that the Mallow is the older grant; that the land known as the Van Buren lands are covered by the said Mallow grants, and the McPherson land is covered by the said Joel McPherson grant; that he made a correct map of these lands on which they were correctly laid down by surveying previously done, and that he surveyed that part of the Mallow land which interlocks with the McPherson land in the fall of 1870. This was done for Howell Fisher and R. H. Catlett, and *the result was reported to them soon after the work was done.* The defendant, Catlett, testified, that he and Fisher purchased from said Thompson and McPherson one thousand and forty-five acres of land at three dollars per acre embracing said seven hundred and thirty-five acres, and made settlement on that basis; that the purchase was by the acre and not in gross, and amounted to three thousand one hundred and thirty-five dollars; that after the down payment was made on the land we were informed by Mr. A. T. Caperton, that Thompson's interest in the land was subject to judgment-liens, that the title was imperfect, and that Thompson's interest would be sold for his debts. We instructed him to buy the interest for us at the sale, which he did, and James F. Patton, the commissioner, drew on Echols, Bell and Catlett the draft filed with the papers for five hundred and eighty-seven dollars and seventy-two cents for the purchase-money, which was paid by them.

The plaintiff excepted to so much of the testimony of Catlett as details a personal transaction had with said Thompson then dead, because it was only hearsay.

On June 22, 1882, the causes were again heard, upon the

papers formerly read, the petition and answer of R. H. Catlett, special replication thereto, the orders and decrees heretofore entered, exhibits, depositions, and was argued by counsel, on consideration whereof it is adjudged, ordered and decreed, that these causes be referred to James Withrow, a commissioner of this court, who shall report the following matters :

1st. Which is the oldest and best title, the one under which the defendants held what is known in this cause, as the Van Buren land, or the one under which they hold, which is known as the McPherson and Thompson land.

2d. Whether the two titles cover the same land, and to what extent; whether there is an interlock, and to what extent. And to this end he is authorized to employ the county surveyor to run out said lands according to the title papers.

3d. He shall ascertain the number of acres of land embraced in the deed of January 19, 1871, from McPherson and Thompson and their wives to R. H. Catlett and Howell Fisher.

4th. He shall report to the court what land was sold in the case of *Nelson Tinsley's adm'r* v. *S. S. Thompson, &c.,* by the commissioner, James F. Patton, the amount of the purchase-money, and who was the purchaser, and whether the purchase-money has been paid and to whom paid.

5th. What amount has been paid by Catlett and Fisher, or either of them, to the said McPherson and Thompson, or either of them, on the purchase aforesaid.

6th. He shall ascertain and report what balance is due on the bonds sued on, after giving credit for all moneys paid on said bonds, and for the amount of land at three dollars per acre, embraced in the McPherson and Thompson deed, which is covered by the Van Buren title (if any), and also after giving credit for any sum which may have been paid in the suit of *Nelson Tinsley's adm'r* v. *S. S. Thompson,* placing the credit for the deficiency of land as of the time of the purchase.

7th. He shall report specially any other matter deemed pertinent by himself or required by any of the parties.

The commissioner afterwards made and returned his

report, which was in substance as follows: That he was unable to say what land was sold by Commmissioner James F. Patton in the case of *Nelson Tinsley's adm'r* v. *S. S. Thompson*, as all the papers in the case were lost, excepting two decrees, one dated October 14, 1872, directing Commissioner Patton "to sell the real estate in the bill mentioned;" and the other dated June 6, 1873, confirming the report of Commissioner Patton, and stating "that all the purchase-money had been paid, and ordering deed to be made to H. Fisher and R. H. Catlett," but there was nothing in the decrees to show that the land mentioned in the bill was, or is, the same land involved in this suit, and he therefore disallowed the credit of five hundred and eighty-seven dollars and seventy-two cents, claimed in the answer of Catlett to have been paid by him and Fisher. He further reported that the whole amount of land to which McPherson and Thompson undertook to convey title by their deed of January 19, 1871, is seven hundred and thirty-five acres, and the undivided half of another tract of six hundred and twenty acres, aggregating one thousand and forty-five acres, and that the amount of land conveyed by their said deed *was one thousand and forty-five acres*; that the Van Buren title is the older and better title; that the Van Buren title conflicts with the McPherson and Thompson title, to the extent of two hundred and sixty-nine acres, which at three dollars per acre amounts to eight hundred and seven dollars, and which deducted from one thousand and forty-five dollars, the amount of said two bonds of five hundred and twenty-two dollars and fifty cents each, left due thereon of principal money at the date thereof two hundred and thirty-eight dollars, which with the interest aggregated thereon to November 1, 1882, amounted to four hundred and six dollars and eighteen cents.

The defendant Catlett excepted to this report because it disallowed the credit claimed by him of five hundred and eighty-seven dollars and seventy-two cents as of the date of April 23, 1873, and for evidence to sustain his exception, referred to the sight draft drawn by Patton on Echols, Bell and Catlett of that date, which appears on file in these causes, but no exceptions to said report were filed by either

of the plaintiffs. These causes were again heard together, and the following decree was entered: "These two causes came on this the 9th of November, 1882, to be again heard upon the papers formerly read and the report of commissioner Withrow made pursuant to the decree entered at the June term, 1881, and exceptions to exhibits and depositions and the arguments of counsel, upon consideration the court is of opinion and decides that the exceptions to the depositions and the exhibits filed by the defendants, so far as they relate to conversations and transactions had between the said Catlett and S. S. Thompson, deceased, and so far as they are hearsay, are sustained; all other exceptions are overruled; that, by reason of the deficiency in the land in the bills and proceedings mentioned, the defendants, R. H. Catlett and Howell Fisher's estate are entitled to a credit or abatement, as shown by said report of Commissioner Withrow, upon the bonds executed therefor of eight hundred and seven dollars, as of the date of said bonds, January 19, 1871, and that one half of said amount must be credited upon the two bonds executed to S. S. Thompson, as of said date, which are the two bonds now held by said Thompson's administrator and by the administrators of Samuel Coffman, and sued upon in these causes, and which constitute the basis of the decree entered in favor of said administrators, respectively, against said Catlett and the said Fisher's estate, at the November term, 1881; and further, that said Catlett and the estate of said Fisher are also entitled to credit on said two bonds for the amount alleged to have been paid by them in the suit of Nelson Tinsley's administrator against S. S. Thompson, by reason of a judgment docketed against said Thompson at the time of their purchase, as aforesaid, and that the amount thus paid was five hundred and eighty-seven dollars and seventy-two cents, on the 22d day of April, 1873; and that said credits must be applied first upon the bond still held by Thompson's administrator, and the balance, after the extinguishment of this bond, must go upon the bond assigned by Thompson to Samuel Coffman, now deceased; and it appearing that the effect of said credits will be to discharge and extinguish entirely the amount heretofore decreed in favor of S. S. Thompson's administrator, and reduce the

amount decreed in favor of Samuel Coffman's administrators to two hundred and thirteen dollars and thirty-eight cents, as of the date of the said decree at the November term, 1881; and it is, therefore, adjudged, ordered and decreed that so much of said decree of the November term, 1881, as was in favor of the administrator of S. S. Thompson be set aside and annulled, and that the bill in the first of these causes be dismissed at the costs of the plaintiff therein, and that the amount, eight hundred and sixty-two dollars and ten cents, heretofore decreed in favor of S. Coffman's administrators, be reduced to two hundred and thirteen dollars and thirty-eight cents, as of the date of said decree at the November term, 1881, and that it shall be a personal decree against said Catlett and the estate of said Fisher, and not against them as non-residents, and that said decree, thus modified, be in all other respects affirmed and continued in full force and effect."

From this decree the plaintiffs in both of said causes appealed.

*A. F. Mathews* for appellants.

*Dennis & Dennis* for appellee.

WOODS, JUDGE:

Two grounds of error are alleged by the appellants, viz: First, in allowing the defendants the abatement of eight hundred and seven dollars on account of the interlock of two hundred and sixty-nine acres between the Van Buren land and the seven hundred and thirty-five acre tract; and second, in allowing the defendants a credit for said sum of five hundred and eighty-seven dollars and seventy-two cents.

The plaintiffs in these causes are prosecuting a legal demand held by each of them, against the defendants, Fisher and Catlett, but having an equitable security, a vendor's lien therefor, they are prosecuting these legal demands in a court of chancery. The plaintiffs stand in the same relation as if they had recovered judgments against the defendants for the amounts due upon said bonds, and the defendants, in the relation of plaintiffs in equity seeking to defeat the plaintiff's legal demands by the equitable matters of defence, alleged in

the answer of Catlett.  By this answer he claims to be entitled to a set-off of five hundred and seventy-eight dollars and seventy-two cents on account of money he was obliged to pay to satisfy judgment-liens created by S. S. Thompson upon his interest in the one thousand and forty-five acres of land conveyed by him and McPherson to Fisher and Catlett. This allegation is fully and explicitly denied by the plaintiffs in their special reply.  There is no evidence in this record to show that any judgment against Thompson was ever recovered, or that any such judgment-lien existed against said lands, at the time said McPherson and Thompson executed the said deed to the defendants, Fisher and Catlett; nor that any portion of said lands was ever sold by Commissioner Patton, or purchased by said defendants.  There being no evidence to sustain said credit of five hundred and eighty-seven dollars and seventy-two cents the same was properly disallowed by Commissioner Withrow, and the circuit court erred in sustaining the exception of defendant, Catlett, to said report, and allowing the said credit of five hundred and eighty-seven dollars and seventy-two cents as a credit upon the obligation of five hundred and twenty-two dollars and fifty cents claimed to be due to the administrator of S. S. Thompson.

Were the defendants, Fisher and Catlett, entitled to the abatement claimed by them because of the alleged interlock set up in the answer of defendant Catlett?  They rest this claim to such abatement upon the ground that two hundred and sixty-nine acres of the tract of seven hundred and thirty-five acres conveyed to them by McPherson and Thompson by their deed of January 19, 1871, lay within the boundaries of the Van Buren land, then owned and held by them under his title, which was an older and better title than that of McPherson and Thompson to said tract of seven hundred and thirty-five acres, and that for this reason the title to said two hundred and sixty-nine acres, the amount of interlock was clearly defective.  It is not alleged by the defendants that they were in any manner defrauded by their said vendors, or that they have in any other manner been deprived of the benefit of their purchase of said tract of seven hundred and thirty-five acres.

It is perfectly clear from the face of the deed made to the defendants by McPherson and Thompson dated January 19, 1871, that while the two parcels of land thereby conveyed were sold for a gross sum of three thousand one hundred and thirty-five dollars, which was an exact multiple of the estimated quantity of land at three dollars per acre, and that the moiety of the six hundred and twenty acre tract thereby conveyed was a sale in gross, it is equally clear that the sale of the seven hundred and thirty-five acre tract was a sale by the acre at the price of three dollars per acre, and that for any deficiency in the estimated quantity of acres contained therein, the defendants were entitled to an abatement from the purchase-money agreed to be paid therefor at the same price per acre. Being in fact a sale by the acre, the defendants in the absence of any express agreement to that effect, would have been entitled to such abatement, for it is well settled that if a deficiency in quantity is found to exist, where the contract is a sale by the acre, the purchaser will be entitled to an abatement for the value of the deficiency, and that a court of chancery will, even after a conveyance executed, injoin the collection of the purchase-money to that extent.

Neither can it now be doubted, that if the title of the vendor to the whole or any part of the land sold, be shown to be clearly defective, a court of chancery will, even after conveyance, with covenant of general warranty executed, and accepted by the vendee who is in possession of the land thereby granted, grant relief to the vendee by injoining the collection of the unpaid purchase-money to the extent of the loss caused by such defect of title; but in such a case the burden of proof rests upon the vendee to show that the title derived from his vendor was clearly defective. *Koger, &c.*, v. *Kane's adm'r, &c.*, 5 Leigh. 606; 3 Rand. 44. In the case last cited Judge Green, delivering the unanimous opinion of the court, said: "This court has in favor of purchasers gone far beyond anything which has been sanctioned by the courts of chancery in England, or elsewhere, in injoining the payment of the purchase-money after the purchaser has taken possession under a conveyance, especially with general warranty. Yet it has never gone so far as to interfere unless the

title was questioned by a suit prosecuted, or threatened, or unless the purchaser could show clearly that the title was clearly defective." See *Wamsley* v. *Stalnaker*, *&c.*, *supra.*

It was admitted by the defendants' counsel as matter of proof in these causes "that Joel McPherson was equally interested with S. S. Thompson in the lands sold by them to R. H. Catlett and Howell Fisher as in the bill is set forth; that McPherson received from said purchasers the same amount as the cash payment that was paid to Thompson, and that the said purchasers executed to McPherson two bonds for the deferred instalments in all respects similar to the bonds executed to Thompson, and which are the subjects of these suits, and that said bonds of McPherson were promptly paid in full, without any claim or demand for an abatement in consequence of an alleged deficiency in the land sold, or for any other reason whatever; and that the said McPherson has never been, and is not now called upon to refund any part of the money thus paid to him." The only other oral testimony taken in the causes before the order of reference was made were the depositions of the witness *Bright* and of the defendant Catlett already referred to. In this condition of these causes the order of reference and the commissioner's report upon the matters referred were made. Now in a case properly referred to a commissioner his report upon the matters referred, if erroneous upon its face may be objected to on the hearing, although not excepted to; but unless it is excepted to, it can not be impeached by adult parties on grounds relating to matters which may be affected by extraneous testimony. If such adult parties fail to except to such report, it will be presumed they were satisfied with it, and acquiesced in its correctness, not only so far as it settles the principles of the account, but also in regard to the sufficiency of the evidence upon which it is founded; and these exceptions must point out the errors complained of with such reasonable certainty as will direct the mind of the court to them; and even when he does so, the parts not excepted to, unless erroneous upon the face of the report, are admitted to be correct, not only as regards the principles, but also as relates to the evidence on which they are founded. *Perkins* v. *Saunders*, 2 Hen. & M.

420; *Wyatt* v. *Thompson*, 10 W. Va. 645; *Hyman, Moses & Co.* v. *Smith &c.*, *Ib.* 298; *Alderson* v. *Nagle*, 14 W. Va. 213; *McCarty* v. *Chalfant*, 14 W. Va. 531; *Chapman* v. *Pittsburg & Steubenville R. R. Co.*, 18 W. Va. 184; *Ward* v. *Ward*, 21 W. Va. 262.

By section 7 of chapter 57 of the Acts of 1822 it is provided, that "when the commissioner has completed his report, unless it be otherwised ordered by the court, or agreed by the parties, he shall retain it, ten days for their examination. Any party without being at the expense of taking a copy, may inspect the report and file exceptions thereto; and the commissioner shall, with his report, return the exceptions and such remarks thereon as he may deem pertinent, and the evidence relating thereto. But any party may except to such report at the first term of the court to which it is returned or by leave of the court after said term." It will be observed, that unless his report is excepted to, during the ten days he retains it for examination, he is neither expected nor required to return with it the evidence that was before him on which he acted, but it is only when his report is excepted to, while it remains in his office after it is completed, that he is required to return any of the evidence before him, and even then he is only required to return that part of the evidence which was before him in regard to the matter excepted to upon which he acted in making up his report. If therefore the commissioner's report is not excepted to, while it remains in his office after it is completed, the evidence that was before him on which he acted forms no part of his report unless specially made so by the report itself or the order of the court. It follows therefore in almost every case, that where there are no exceptions to his report filed with the commissioner the court to which it is returned cannot know what evidence was before him, and must therefore presume that he had before him sufficient evidence to sustain his report, or else the party injured thereby would have excepted.

Whether it is proper in any given case for the circuit court to direct a reference to a commissioner or not, is a matter in which that court must of necessity exercise a wide discretion, and this Court will not for that cause alone reverse

a decree otherwise correct, although it may be of opinion that some of the questions referred may be such as the court itself, and not the commissioner, ought to determine.    In the cases under consideration, all the questions referred to the commissioner except perhaps the first were proper subjects for his consideration and decision.    Whether it was proper to require the commissioner to report, "which is the oldest and best title, the one under which the defendants hold what is known in this cause as the Van Buren land, or the one under which they hold what is known as the McPherson and Thompson land," or not, is a matter of doubt in the mind of this Court.    It becomes however immaterial in these causes, as the commissioner specially reports the dates of the several grants from the commonwealth of Virginia under which the defendants held the Van Buren land, and also a similar grant to Joel McPherson under which he and Thompson held the seven hundred and thirty-five acre tract, together with the dates of said several grants, and that the last named grant is part of the same land conveyed by McPherson and Thompson to the defendants, Catlett and Fisher by the deed dated January 19, 1871, and concludes as follows: "Your commissioner is of opinion therefore, that the Van Buren title is the older and better title."    It is evident from the report itself, and from the fact that no exceptions were filed to said report either before the commissioner, or in court, by the plaintiffs, that there was no evidence of title before the commissioner except the several grants from said commonwealth, and the deeds conveying said lands from the original owners to the defendants, Fisher and Catlett, and in the absence of all other evidence the commissioner correctly decided that the Van Buren was the older and better title.

The defendants excepted to the report of the commissioner within ten days after it was completed, because he disallowed the credit claimed of five hundred and eighty-seven dollars and seventy-two cents, as of April 23, 1873, alleged to have been paid Commissioner James F. Patton, and as evidence of his right to such credit, he specially referred to the sight draft drawn by Patton on Echols, Bell and Catlett dated April 23, 1873.    No other evidence in support of this credit is referred to by the exceptor, and no other is reported by the

commissioner, and from his report it is quite evident no other evidence was before him, and he very properly disallowed the same as a credit upon the amounts claimed by the plaintiffs. The commissioner reported that two hundred and sixty-nine acres of the seven hundred and thirty-five acre tract, lay within the boundaries of the Van Buren land which was held by the defendants by the older and better title, and that the value thereof at three dollars per acre amounted to the sum of eight hundred and seven dollars, which deducted from the two obligations of five hundred and twenty-two dollars and fifty cents each, claimed by said plaintiffs, left due thereon as of January 19, 1871, the sum of two hundred and thirty-eight dollars with interest from that date up to November 1, 1882, aggregating on that day the sum of four hundred and six dollars and eighteen cents.

It is evident from the admissions of the defendants' counsel, that McPherson and Thompson were equally interested in the sale of said lands to the defendants Fisher and Catlett, and that he has been paid his full half of the purchase-money, that only one half of said abatement ought to be deducted from said obligations held by said plaintiffs, and that the report of said commissioner ought to be so modified, as to find the amount to be abated from said obligation to be the sum of four hundred and three dollars and fifty cents, leaving due thereon on January 19, 1871, the sum of six hundred and forty-one dollars and fifty cents with interest from that date until paid. We are therefore of opinion that the report of said commissioner be modified as aforesaid and in all other respects confirmed. We are therefore further of opinion that the defendants are entitled to an abatement from their purchase-money due to the said plaintiffs, the sum of four hundred and three dollars and fifty cents as of the date of January 19, 1871; and that the plaintiffs, William M. Coffman and A. H. Rader as the administrators of Samuel Coffman, deceased, are entitled to recover from the defendant R. H. Catlett, and from the defendant J. W. Johnston, administrator of Howell Fisher, deceased, out of the assets of his intestate in his hands to be administered the sum of five hundred and twenty-two dollars and fifty cents with interest thereon from January 19, 1871, until paid; and that

the said debt having been assigned to said Samuel Coffman
on July 12, 1871, for value received by said S. S. Thompson
the same is entitled to be paid in full out of the proceeds of
the sales of the said lands conveyed by McPherson and
Thompson to Fisher and Catlett, before any portion of the
proceeds of such sales shall be applied in satisfaction of any
part of the purchase-money remaining due to the administra-
tor of S. S. Thompson; and we are further of opinion that
the plaintiff J. W. Johnston administrator of S. S. Thomp-
son, deceased, is entitled to recover from the defendant R.
H. Catlett, and from the defendant J. W. Johnston, adminis-
trator of Howell Fisher, deceased, out of the assets of his in-
testate in his hands to be administered the sum of one hun-
dred and nineteen dollars, the residue of said obligation of
five hundred and twenty-two dollars and fifty cents held by
said intestate after deducting therefrom the said abatement
of four hundred and three dollars and fifty cents with inter-
est on said one hundred and nineteen dollars from the 19th
day of January, 1871, until paid, and that to secure the
amount herein ascertained to be due to the said plaintiffs re-
spectively, a vendor's lien exists upon the moiety of said six
hundred and twenty acres, and upon the tract of seven hun-
dred and thirty-five acres of land conveyed as aforesaid to
Fisher and Catlett; and we are further of opinion the plain-
tiffs by the levy of their several attachments sued out in these
causes against the estate of R. H. Catlett on September 13,
1881, acquired attachment liens as of that date, upon the
interest of said Catlett, being an undivided sixth in the
following tracts of land, all situated in Greenbrier county on
the waters of Anthony's creek, viz: Six hundred and
eighty-seven and one fourth acres conveyed to R. H. Catlett
and Howell Fisher by James Scott by deed dated November
22, 1870; one thousand three hundred and five acres con-
veyed to the same parties by Jesse Hull and William E.
Boswell by deed dated November 22, 1870; four thousand
acres conveyed to same by Jacob Van Buren by deed dated
November 22, 1870; one hundred and fifty-five acres con-
veyed to same by R. H. Maury by deed dated December 15,
1870; one hundred and thirty-four acres conveyed to same
by Moses H. Perry and John F. Perry by deed dated

November 22, 1870; two hundred acres conveyed to same by Elizabeth May, Moses H. Perry and John F. Perry by deed dated November 22, 1870, and one hundred and fifty-five acres conveyed to same by Thomas Matthews by deed dated January 16, 1871, and that in case a sale of said lands or any of them became necessary to satisfy the debts herein-before declared to be due to said plaintiffs respectively, we are further of opinion that none of the lands attached as aforesaid should be sold until the said land conveyed by said McPherson and Thompson to Howell Fisher and R. H. Catlett shall be first sold and the proceeds thereof prove insufficient for the payment of the amounts due to said plaintiffs.

For the reasons hereinbefore stated the decree of the circuit court of Greenbrier county rendered in these causes on November 9, 1882, as well as the decree rendered on November 11, 1881, must be reversed with costs to the appellants against all the appellees, and the causes must be remanded to the said circuit court for further proceedings there to be had therein according to the principles announced in this opinion, and further according to the rules and practice in courts of equity.

REVERSED.    REMANDED.