# CHARLESTON.

Carskadon *v.* Minke *et al.*

Submitted September 3, 1885.—Decided November 14, 1885.

| 26 | 729 |
|----|-----|
| 42 | 384 |
| 26 | 729 |
| 46 | 104 |
| 46 | 163 |
| 26 | 729 |
| 51 | 393 |

1. The practice of making irrelevant and inconsiderate points and assignments of error, and the repetition of the same point in various forms, ought to be avoided as far as possible by counsel practicing in this Court. Such practice condemned. (p. 736.)

2. A bill by a vendor to enforce his vendor's lien sets out an agreement between the plaintiff and the purchasers, by which it was agreed the land should be the joint property of the plaintiff and the purchasers, that it should be laid off into town lots, the lots sold, and the net proceeds applied to the payment of the plaintiff's lien, and the residue, if any, of the lien paid by the purchasers; that lots had been sold by the parties as a company or partnership partly for cash and partly on credits; that all the purchase-money had become due and a large portion of it remained unpaid; and prayed that the transactions of the company and the accounts of the sales of lots might be settled, and for a decree against the purchasers for the balance of the purchase-money, HELD:

   Such bill is not multifarious, nor is it demurrable for the reason that the purchasers of the lots so sold are not parties to it. (p. 737.)

3. In a suit to settle the affairs of an unincorporated company or a partnership—one of the members being dead—the surviving members are not under the statute of 1882 competent to testify as witnesses in regard to such affairs. (p. 738.)

4. Items or matters excepted to in the report of a commissioner, which is recommitted by the court, will not be open to judicial

92

investigation in acting upon the report made upon such recommitment, unless such items or matters are excepted to in the latter report. (p. 738.)

5. In a suit to enforce a vendor's lien the plaintiff may properly take a personal decree against the purchasers for the balance ascertained to be due him from them, and it is in the discretion of the court to authorize the plaintiff to enforce such personal decree without waiting for the collection of the proceeds of the land subject to such lien. (p, 740.)

SNYDER, JUDGE, furnishes the following statement of the case:

In October, 1877, T. R. Carskadon exhibited his bill in the circuit court of Mineral county against Frederick Minke, S. B. Gleason and the widow, administrator and heirs at law of S. F. McBride, deceased, in which he avers:

(1.) That by deed dated October 19, 1874, he sold and conveyed to the said Minke, Gleason and McBride the undivided three fourths of 100 acres of land near the town of New Creek, now Keyser, in Mineral county at the price of $15,000.00; that fifty dollars was paid down and the purchasers, executed to him their three bonds for the residue of the purchase money, the first for $4,950.00, and the other two for $5,000.00 each payable respectively May 1, 1875, May 1, 1876 and May 1, 1877, with interest on the last two from May 1, 1875 till paid; that a lien was retained in the deed to secure the payment of said bonds; that it was stipulated in said deed that as the parties thereto, under the name of the Keyser Land and Improvement Company, should sell portions of said land to be surveyed and laid off into town lots, the plaintiff should release his lien on such lots as should be sold and conveyed to purchasers thereof;

(2.) That by a subsequent agreement made October 23, 1874, between the plaintiff, Minke, Gleason and McBride, it was agreed that said land should be held for the joint and equal use of all said parties at their joint and equal expense, and when the same or any portion thereof should be sold the proceeds, after deducting expenses, should be retained by the plaintiff until three fourths thereof should aggregate $14,950.00, the amount of the purchase-money due the plaintiff, and in the event the proceeds from such sales should not

pay the aforesaid bonds as they matured, the said Minke, Gleason and McBride bound themselves personally to pay to the plaintiff any balance not so paid when due, and after such payment the parties should share equally in said proceeds, which were to be paid over on the demand of any of the parties entitled thereto, it being therein agreed that the plaintiff should act as treasurer for all the parties;

(3.) That soon after said conveyance, the plaintiff, Minke, Gleason and McBride proceeded to lay off said land into town lots, streets and alleys, had a map made thereof and commenced to sell the lots to sundry purchasers; that about one year before the filing of this bill said McBride died intestate, leaving three infant children as his heirs, and a widow; but before the death of McBride a large number of lots had been sold by written contracts to different purchasers, and a considerable portion of the money realized from said sales was expended by the parties acting under the name of the "Keyser Land and Improvement Company" in the laying out, opening and grading of streets and alleys and in the erection of houses, etc.; that a large number of said lots were sold through the agency of McBride, Minke and Gleason, and particularly the two latter, and they and each of them received the proceeds of such sales; that some of the said lots were sold by way of trades for lumber and building materials and other property, some of which was received by the plaintiff, some by Minke and Gleason and perhaps some by McBride; that most of the lots were sold partly for cash and partly on credits; some of them have been paid for in full and others only in part, and some of the purchasers so indebted are willing to pay the balances due from them when a deed can be made to them for their lots, which can not be done, by reason of the death of McBride, and they desire the court to authorize some one to convey the interest of McBride in said lots upon the payment of the balances due thereon;

(4.) That there never has been any settlement of the business and accounts among the members of said company although the plaintiff has been ready and frequently requested the other members to make such settlement; that a large part of the purchase-money bonds for said land still re-

mains due and unpaid to the plaintiff, in fact all of said last two bonds remain due and unpaid.

The plaintiff prays, that a commissioner may be appointed to convey the title of the heirs of McBride in the lots sold to the purchasers thereof; that his vendor's lien may be enforced by a sale of the said 100 acres of land not sold in lots in such manner as may to the court seem proper, that a settlement may be made under the direction of the court of the affairs of said company and between the plaintiff and the other members thereof; that all proper and necessary orders and references may be made, and that he may have other and general relief.

There seems to have been a demurrer to the bill which was overruled; and all the defendants filed answers, the defendants Minke and Gleason uniting in a joint and separate answer; but as a large portion of the proceedings in the circuit court are omitted from the transcript here, it does not appear when said demurrer and joint answer of Minke and Gleason were filed. The demurrer however was overruled by decree of May 11, 1881.

The answer of Minke and Gleason does not deny or controvert any of the allegations of the plaintiff's bill. They aver that the plaintiff as treasurer of the Keyser Land and Improvement Company received large amounts of lumber, cash, &c. as proceeds of lots sold and ask that a full and complete account be taken thereof and proper vouchers required for all disbursements. They file certain accounts, one showing a balance of $217.34 due to Minke from said company, and another for lumber furnished the plaintiff by respondents and McBride in February, April and May, 1875, amounting to $1,054.51, for which they claim credit on their bonds to the plaintiff for the purchase of said land. They state that they are willing and anxious that the accounts of said company should be adjusted and proper balances ascertained; that they are willing to do all in their power to arrive at correct results and will furnish all statements accessible to them of lumber or other things received by them in Cumberland and sold for the company's account or otherwise as they may be needed by the commissioner to whom the cause has been referred.

By decree of December 3, 1877, the cause was referred to a commissioner to state the accounts between the plaintiff and the other members of said company and ascertain the balance due the plaintiff on his purchase-money bonds; and by the consent of the parties a commissioner was appointed to convey the interest of the heirs of McBride in lots theretofore sold to the purchasers thereof upon the payment of any balances due thereon, and to unite with the living owners in making further sales of lots to be reported to court for confirmation, &c. .

The commissioner made a report which was excepted to by the defendant, and the court having sustained one of the exceptions by decree of May 30, 1879, re-committed the report with directions to the commissioner to take further testimony and upon consideration thereof and the exceptions filed modify his report as to him may seem necessary.   And by consent of the parties, it was ordered that all of said 100 acres of land not theretofore sold in lots, including the undivided one fourth of the plaintiff, should be sold by commissioners appointed for the purpose at public auction.   The said commissioners made sale of all said real estate and made report thereof to court which was confirmed without exception.

The commissioner to whom the former report had been re-committed made a second report which was excepted to by the defendants and re-committed to him.   He then made a third report which was also excepted to and again re-committed by the court with specific instructions to him.   The commissioner then made and returned his final report containing three separate statements designated "E," "F" and "G" respectively, which are explained by the commissioner as follows :

"Statement 'E' is made up by charging Carskadon with his total receipts at the end of each year and crediting him with his disbursements and with one fourth of his net receipts and with the purchase-money notes as they fall due, carrying forward the balance found due at the end of each year into the accounts of the next year, with interest on said balance. This I have adopted as the correct method of stating the account. By this statement I find the balance due the complainant, T. R. Carskadon, on his purchase-money notes on November 22,

1881, to be $6,285.68, after charging him with all the money he has received from sales made by Reynolds and Shay, special commissioners, under the decree of this court in this cause and from all other sources.

"Statement 'F.'   As a basis for this statement, I first ascertained the state of Mr. Carskadon's account with the partnership (exclusive of his purchase-money notes) by finding the balances due from him to the partnership at the end of each year, and calculating the interest on those balances up to November 22, 1881, the result of which showed a balance due the partnership from him, on November 22, 1881, of $9,582.17, without taking into consideration what he had received from Reynolds and Shay, special commissioners, from sales under decree in this cause.   I then made up statement 'F' by charging said Carskadon with the amount so found due from him to the partnership, and crediting him with the amount of principal and interest due him on the purchase-money notes from the defendants, and also with one fourth of the amount due from him to the partnership.   I also charged him with the amount received by him from sales made by special commissioners Reynolds and Shay.   By this statement I found there would be due the complainant Carskadon on his purchase-money notes, on November 22, 1881, $5,933.45.   I do not consider this the proper method of stating the account, but report it for the information of the court.

"Statement 'G.'   In this statement I have first ascertained the amount due the partnership by each of the partners by the method above stated relative to Carskadon's account.   I then added these several amounts together and obtained the total amount of the net receipts and interest on them of all the partners.   Of this amount the complainant Carskadon is entitled to one fourth.   I have accordingly deducted one fourth of this amount of total net receipts from the amount due from Carskadon to the partnership, and have then credited the balance of the amount due from him to the partnership on his purchase-money notes.   I have also credited said notes with the amounts received by him from sales by commissioners Reynolds and Shay.   By this statement I find there is a balance due the complainant Carskadon on his purchase-money notes from the defendants of $6,218.71¾."

The commissioner also reports that there is still due from the purchasers of land and lots at the sale made by commissioners Reynolds and Shay $883.88, less $3\frac{1}{2}$ per cent commission, one fourth of which belongs to the plaintiff and the residue when collected is applicable to the payment of the amount found due the plaintiff. He also reports that there is still about $700.00 due from purchasers of lots of which three fourths of so much as may be realized therefrom 'will be applicable to the plaintiff's said debt. He also reports that there remains on hand some lumber belonging to the company still unsold, but as he was not furnished with any evidence of its value he is unable to report its value in money.

The defendants excepted to this report; *first,* because in ascertaining the balance due the plaintiff the commissioner has allowed as disbursements items that are not expenses and therefore not properly deducted from the plaintiff's receipts according to the agreement of Oct. 23, 1874—giving in the exception a long list of such items; *second,* because the commissioner has allowed the plaintiff credit for the full amount of freight charges paid by him to the railroad for lumber purchased by the company when such credit should at most have been for only one half of such charges; and *third,* because the evidence shows that $10,179.87 worth of lumber, shingles, &c. were received by the plaintiff as treasurer of the company, on which $937.95 was paid for freights, while only $8,803.56 worth is accounted for. These were the only exceptions filed to the last and final report.

By decree entered December 6, 1881,the court overruled all of the said exceptions except as to one small item in the list filed with the first exception which item, and another sum admitted by the plaintiff, it deducted from the balance found due the plaintiff by the commissioner; and after reciting, that statement "E" of the report "having been made out in conformity with the fifth exception of the defendants to the report filed Nov. 12, 1879, and the opinion of the court rendered June 2, 1880, sustaining said exception," the decree adopts said statement "E." with the modification just indicated and finds according thereto that the plaintiff is entitled

to recover from, and decrees to him against, the defendants, Minke and Gleason personally, and the estate of McBride in the hands of his administrator, the sum of $6,269.34 with interest thereon from Nov. 22, 1881 till paid and the costs of suit incurred since the decree of November term, 1879. From this decree the defendant Minke obtained an appeal and *supersedeas.*

*R. White* for appellant.

*F. M. Reynolds* for appellee.

SNYDER, JUDGE :

The petition for the appeal in this cause contains, in various forms, modifications and subdivisions, about thirty assignments of errors, many of which do not arise in the record, and nearly all of them are without merit. Some of them are to interlocutory orders never acted upon or given any effect in the final decree. Others are to the action of the court sustaining exceptions taken by the appellant, and others again are to questions of fact and accounts reported upon by the commissioner concerning which the evidence on which the commissioner acted was not required to be filed or made a part of the record. *Thompson v. Catlett,* 24 W. Va., 524.

While this Court is necessarily indulgent in giving lattitude to counsel as to the form in which they may elect to present the errors complained of, or as to the number of assignments they may think proper to make, it is earnestly advised and hoped, that they will not carelessly and unnecessarily occupy the time and increase the burdens of Court by making irrelevant and inconsiderate points, and assignments which ought and would be omitted upon a proper examination and understanding of the record. Such points and assignments, and the repetition of the same point in various forms, as also what may be termed " fishing " assignments, can not subserve any good purpose, but are a positive inconvenience to the Court and discreditable to counsel.

The assignments now before us are rather the occasion than the cause of these remarks, as the fault complained of has been found in other cases so frequently that we deem it our duty to call attention to it. But in doing so no particular re-

flection is intended to be made upon the action of the learned counsel who may have prepared the petition in this cause, as no doubt it was prepared in good faith and, perhaps, without time to examine the record thoroughly.

The first assignment of error of sufficient importance to require notice is the overruling of the demurrer to the bill. The appellant contends that the bill is multifarious, that it seeks to enforce the plaintiff's vendor's lien, to settle the transactions of the Keyser Land and Improvement Company, and to specifically execute contracts made by said company with various purchasers for lots sold against such purchasers without having made them parties.

This we think is a plain misconception of the object and purpose of the bill. It does not seek to enforce the contracts for lots sold and asks no relief whatever against the purchasers thereof. It does not contemplate any interference with their contracts or any disturbance of their rights. To have made these purchasers parties and have asked relief against them would have made the bill multifarious. The agreement of October 23, 1874, provided that a portion of the proceeds of the lots sold should be credited on the plaintiff's debt, it was therefore necessary for the plaintiff to state that fact and ask for an ascertainment of the amount realized from such sales and a settlement between the parties to said agreement in order to find the balance due on his debt. That agreement was made by all the parties and it distinctly and expressly provided by reference to the deed of October 19, 1874, and the contract of purchase, that the plaintiff should release his vendor's lien on all lots sold. The lots having thus been sold free from the lien of the plaintiff, he could not have enforced his lien against them. The appellant joined in these sales, and he was, consequently, estopped from demanding that the purchasers thereof should be brought into this suit for the purpose of subjecting their lots to the payment of his debt to the plaintiff. The proper and only purpose of the bill is plainly stated in it. It was to enforce the plaintiff's lien for the purchase-money due against the unsold portion of the said land and it contained the proper allegations and parties for that purpose. I therefore think the demurrer was rightfully overruled.

It is claimed that the circuit court erred in its direction to the commissioner to exclude the testimony of the parties in settling the firm or company accounts between themselves. It is evident from the exceptions that this ruling was made at the instance of the defendants and therefore in part at least by the appellant himself. But be this as it may, the court did right. McBride one of the partners was dead and in such case the statute declares that the survivors shall not be examined as witnesses in regard to any personal transaction or communication between them and such deceased person. Sec. 23, ch. 160, Acts 1882, p. 544.

Several assignments of errors are founded on the overruling of the defendants' exceptions to reports of the commissioner which were afterwards re-committed and which exceptions were not renewed or made to the final report on which the decree complained of is based. The items or matters thus excepted to in the former report and not excepted to in the final report can not be considered as open for judicial investigation either in the court below or the appellate court. *Kee* v. *Kee*, 2 Grat. 117.

The only other objections open for consideration by this Court are the exceptions of the defendants to the final report of the commissioner, and the propriety of the final decree.

The court in its decree of December 5, 1881, states its reasons for everruling the first and second exceptions to said report, in substance, as follows: It appearing to the court from the evidence and reports of the commissioner and the answers and accounts filed therewith that, by the mutual agreement of all the parties and with a view of promoting the sale of the said 100 acres of land, many lots thereof were sold for horses and other property, and large quantities of lumber were purchased by them, one half of which was to be paid for in lots at specific prices and the other half in cash; that the horses and lumber and other property thus obtained were sold by the several partners; each in rendering an account of his transactions charged himself with the gross proceeds received therefrom and credited himself with the amounts paid for freights and other expenses incurred in taking care and disposing of the same, including expenses of the partners while attending to the business, and that the

money thus realized was considered by all as the proceeds of the land; and it appearing further that all the items in the said first exception are charges of this character and that the plaintiff has been charged with all the gross proceeds received by him and not merely the one half thereof, and that the receipts with which he has been charged greatly exceed the amount paid by him for freights and other expenses, and that the defendants have the benefit thereof, all of which the court thinks is just and equitable, it doth overrule said first and second exceptions.

I think these reasons of the circuit court are well sustained and fully warranted by the record. It is not claimed that any of the items mentioned or referred to in said exceptions are incorrect or that the company did not get the benefit of them, but it is claimed that under the agreement of October 23, 1874, the *expenses* alone should have been deducted from the gross proceeds of the sale and three fourths of the residue credited on the plaintiff's debt, leaving the other charges and accounts to be settled among the parties as a distinct transaction. The injustice and inequity of so doing is sufficiently apparent from the reasons given by the circuit court and further discussion could not make them plainer.

The third exception to the report was also properly overruled. The report does not, nor does the record, so far as I can discover, show any such figures as $10,179.87, or $8,803.56, or anything approximating either. This exception seems to be entirely without merit, but even if such were not the case, the exception is too general, indefinite and uncertain to be considered by the Court. *McCarty* v. *Chalfant*, 14 W. Va. 531; *Chapman* v. *R. R. Co.* 18 *Id.* 185.

The court, in its decree, assigns as a reason for adopting statement "E" of the commissioner's report the fact that it was made in conformity with an exception filed by the defendants to a former report. It having been made, therefore, at the instance of the appellant, he is not in a situation to complain of it; and moreover, the commissioner adopted it as the correct statement, and not being excepted to it can not be set aside by this Court unless it is plainly erroneous on its face. *Ward* v. *Ward*, 21 W. Va. 262; *Thompson* v. *Catlett*, 24 *Id.* 524.

The report shows that the money received from time to time by the plaintiff as the proceeds of lots sold was generally in small sums and that he was constantly disbursing parts of it for expenses of the company. It was, therefore, necessary to fix some period for striking balances and applying the net proceeds to the liquidation of the plaintiff's debt. To do so annually was certainly not to the prejudice of the appellant. I am of opinion that said statement was as nearly just to all the parties as it could be made under all the circumstances.

It is asserted that compound interest was charged in this statement. But upon an examination of the same it appears that where the proceeds credited in any year did not pay the interest up to the date of such credit, interest has been charged on the principal only of the debt according to the rule announced by this Court in *Hurst* v. *Hite*, 20 W. Va. 183, and *Ward* v. *Ward*, 21 *Id.* 262.

It is further contended that the decree of December 5, 1881, is erroneous because it gives a personal decree against the purchasers for the balance of the purchase-money without waiting for the collection of the $883.88, due from the purchasers of the land and lots sold and the $700.00 due to the company, as reported by the commissioner, and crediting so much of said collections as may be found applicable thereto on the debt due the plaintiff. By the terms of the agreement of October 23, 1874, the appellant and his co-purchasers agreed and bound themselves to pay the bonds due the plaintiff as they should become due. This they did also by the bonds themselves. It is clear then that the plaintiff might have sued at law and recovered a personal judgment for the balance due on the bonds. It can not therefore be seriously contended that because he has sued in equity he has not the same right. All the bonds were long past due and the plaintiff was clearly entitled to a personal decree. The uncollected assets when realized will of course belong to the parties according to their respective rights and the appellant, if he chooses, may apply his portion in satisfaction of the plaintiff's decree against him if he shall not have paid said decree off before such assets are collected. *Fisher* v. *Brown*, 24 W. Va. 713.

I have now considered all the questions presented by the

record which are of sufficient importance to require notice, and having found no error to the prejudice of the appellant the decree complained of must be affirmed.

AFFIRMED.